[Sac. No. 397.  In Bank.—December 31, 1898.]

## SUSAN L. LOCKE, Administratrix, etc., Respondent, v. AMELIA KLUNKER, Administratrix, etc., Appellant.

FORECLOSURE OF MORTGAGE—POWER OF RECEIVER—RIGHT OF MORTGAGOR TO CROPS.—The court cannot by the appointment of a receiver in an action for the foreclosure of a mortgage under section 564 of the Code of Civil Procedure, take from the mortgagor or from any person claiming under him, the rents, issues, and profits of the mortgaged premises, if the mortgage does not so provide in terms, and a receiver appointed by the court in such action cannot be properly directed to apply the proceeds of the growing crops on the mortgaged premises to the deficiency judgment, where the decree of foreclosure was not entered until the crops were gathered.

ID.—CONSTRUCTION OF CODE—EFFECT OF APPOINTMENT OF RECEIVER—CREATION OF LIEN.—It was not intended by section 564 of the Code of Civil Procedure to create a new lien not before existing by the mere appointment of a receiver; and when he is appointed for any legitimate purpose, he cannot be directed to take possession of the crops of the mortgagor upon which no lien previously exists.

ID.—CAPACITY OF ADMINISTRATRIX TO SUE—DEMURRER—ANSWER.—It is not sufficient ground of demurrer that it does not appear from the complaint that plaintiff had capacity to sue as administratrix of the estate of a deceased mortgagor, but it must appear that she has not such legal capacity to sue, and where it does not so appear, the objection can only be taken advantage of by answer.

ID.—OWNERSHIP OF MORTGAGE—PLEADING.—Where the note and mortgage sued upon were on their face made to the decedent, of whose estate plaintiff is administratrix, and were in the posses-

sion of the plaintiff, an averment that the plaintiff is the owner and holder is unnecessary.

ID.—EVIDENCE OF NONPAYMENT—PRODUCTION OF NOTE BY ADMINISTRATRIX OF DECEASED PAYEE.—The production of the note from the possession of the plaintiff, as administratrix of the estate of the deceased payee, with the indorsements of payments made thereon, is sufficient evidence of nonpayment of the residue of the note to justify a finding of such nonpayment.

ID.—INTRODUCTION OF NOTE—INDORSEMENT BY DECEDENT—CONSTRUCTION OF CODE.—The introduction of the note with the indorsements of payments made thereon by the decedent, is not making the decedent a witness, and subdivision 1 of section 1880 of the Code of Civil Procedure does not apply.

ID.—FINDINGS OF FACT IN DECREE.—It is permissible to embody the findings of fact in the decree of foreclosure of a mortgage.

ID.—ACCOUNT OF RECEIVER—SALE OF GRAIN WRONGFULLY HARVESTED—ALLOWANCE OF EXPENSES.—In the account of a receiver who had taken unauthorized possession of and had harvested a crop of grain belonging to the estate of the deceased mortgagor, he should not be charged with the gross proceeds of the crop, but should be allowed the reasonable expenses incurred by him without any charge for his services as receiver, in the absence of any showing that he failed to harvest the crops economically, and with as little cost to the estate as they could have been harvested by its administratrix.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial, and from orders refusing to vacate an order appointing a receiver and settling an account of the receiver. Joseph H. Budd, Judge.

The facts are stated in the opinion.

Minor & Ashley, for Appellant.

Elliott & Elliott, for Respondent.

THE COURT.—When this case was in Department the opinion hereto annexed was prepared by Mr. Commissioner Chipman. After due consideration of the case, we are satisfied with that opinion and with the conclusions therein reached, and that the judgment of the court below should be modified in accordance with the directions of said opinion. Therefore, for the reasons given in that opinion, the decree of foreclosure and the order settling the receiver's account are affirmed, and

the court is directed to cause the net proceeds of the crops in the hands of the receiver to be paid to the defendant administratrix.

McFarland, J.,   Harrison, J.,<br>Garoutte, J.,     Van Fleet, J.,<br>Temple, J.

CHIPMAN, C.—This is an action for the foreclosure of a mortgage. The pleadings are verified. The complaint was filed June 19, 1896, and alleged, among other things, that the entire estate of which defendant was administratrix, including the mortgaged premises, was appraised at a value less than the mortgage debt, and that said mortgaged "premises are inadequate for the satisfaction of said indebtedness, and will not probably sell for enough to satisfy the decree in this case." The complaint prayed for the appointment of a receiver "to take charge of said premises and its income, rents, and profits, with authority to harvest and sell the crops so harvested, and the same be applied on said indebtedness." Upon filing the complaint, the court made an *ex parte* order appointing a receiver as prayed for. Defendant demurred to the complaint in due time, and on July 6th moved the court to vacate the appointment of the receiver upon the ground that the court had no jurisdiction to make the order, and that the facts do not establish a proper case for such appointment. The court denied the motion. The motion of defendant was heard upon an uncontroverted affidavit; from which it appeared, among other things, that the mortgage did not contain any provision by which the rents, issues, and profits of the premises were mortgaged; nor did the mortgage provide for the appointment of a receiver.

It appeared from the affidavit that the only real property belonging to defendant estate is the mortgaged property; that defendant's intestate died April 5, 1896, leaving as his sole heir a minor son; that defendant was duly appointed administratrix May 1st, and on June 8th she petitioned to have the said real property set apart as a homestead for the benefit of the minor, which was done by order of the court of June 22, 1896. It also appeared in the affidavit that the defendant administratrix and

the minor were in possession of the land at the hearing of the motion, and that on June 20, 1896, the receiver claimed possession. A bill of exceptions was duly settled August 12, 1896, showing the foregoing proceedings. August 22, 1896, plaintiff filed a second amended complaint making the minor child a party defendant, to which the defendants in due time demurred and answered. It further appears by a second bill of exceptions that on September 7, 1896, defendants again moved the court to revoke and set aside the order appointing the receiver, and to discharge him upon the grounds stated in the first motion, and upon the same affidavit and upon the demurrer and answer to the second amended complaint, and upon the further grounds that the court had made no new order of appointment after the complaint was amended, and that the minor child was and is the owner of the crops. The court denied the motion. The cause was heard November 6, 1896, and the court embodied its findings of fact in the decree which it entered, as prayed for by plaintiff, on November 14, 1896. An amended decree was entered *ex parte* on December 8, 1896, including some portion of the mortgaged land omitted from the first decree. A third bill of exceptions was duly settled setting forth the proceedings at the trial, and defendant's motion for nonsuit at the close of plaintiff's evidence and motion for a new trial and its grounds.

A fourth bill of exceptions was duly settled setting forth that the report and account of the receiver came on to be heard April 17, 1897, together with plaintiff's motion for an order directing the receiver to pay to plaintiff the moneys in his hands, the proceeds of the crops grown on the mortgaged premises; that defendants still insisted upon their objections to the appointment of the receiver, and objected to the hearing of the account and the granting of plaintiff's motion, and claimed that the moneys in the hands of the receiver should be paid to defendant administratrix and guardian; that the receiver was acting without authority of law, and the court had no jurisdiction to hear or to settle the account because the appointment was void; that the account showed that the receiver had received from the rents and profits of the mortgaged property $1,173.69, and had expended in harvesting the crops and other ways $401.77, leav-

ing a balance in his hands of $771.92; that the returns of sales
under foreclosure showed a deficiency of $1,019.74; that the
court settled the receiver's account as rendered, and on April
20, 1897. at an adjourned hearing of plaintiff's motion, the
court made an order directing the receiver to apply the moneys
in his hands on the deficiency judgment of plaintiff.    The ap-
peal is from the decree of foreclosure as first rendered, and also
from the order amending the decree; also from the various or-
ders of the court set forth in the various bills of exceptions
which need not be recapitulated here.

1. The point particularly relied upon by appellants is that,
under subdivision 2, section 564 of the Code of Civil Procedure.
the court cannot, by the appointment of a receiver, take from
the mortgagor. or from any person claiming under him, the
rents, issues. and profits of the mortgaged premises and apply
them to the mortgage debt unless the mortgage so provides in
terms.    Quite recently the point has been under examination
in this court and the previous cases reviewed.    (*Bank of Wood-
land v. Heron*, 120 Cal. 614.)    The subject was also fully dis-
cussed in *Simpson v. Ferguson*, 112 Cal. 180; 53 Am. St. Rep.
201.·   Upon the authority of these cases and the principles
therein enunciated we think the trial court erred in directing
the proceeds of the growing crops of the mortgaged premises
to be applied to the deficiency judgment   In the Bank of Wood-
land case it appeared that an assignment by bill of sale had
been made of the crops before the assignor or the assignee knew
of the order appointing a receiver; and that the rights of third
persons had intervened, and it also appeared that the receiver
never had actual possession of the crops; but we think that the
principle upon which the decision rests. and the reasons ad-
vanced in support of the conclusions reached, are decisive of
the rights of appellants in this case, although the facts differ
somewhat in the two cases.

Defendant administratrix entered upon her duties as such
May 1, 1896, and was appointed guardian of the minor's person
and estate April 10, 1896.    She was in possession of the prop-
erty at the time the receiver was appointed, and remained in
possession of the real property thereafter.    It does not appear
when the receiver took possession of the crops, but presumably

at harvest, which as to the barley may have been before, but as to the wheat must have been after, the court had set apart the real property as a homestead on June 22d. The administratrix was entitled to the possession of the crops for the purposes of administration, payment of debts of deceased and other administrative purposes. But, apart from these facts, we do not think the appointment and the subsequent possession of the receiver created any lien on the crops, or authorized the application of the proceeds to plaintiff's deficiency judgment. We are not aware that this court has ever held in any case, where the mortgage did not purport to mortgage the rents, issues, and profits, that the growing crops of the mortgagor may be taken possession of by a receiver under section 564, *supra,* and the proceeds applied to any deficiency there may be upon the foreclosure sale of the mortgaged premises. In *Montgomery v. Merrill,* 65 Cal. 432, the rents and profits were expressly mortgaged, and the crops were held to be applicable to the deficiency judgment, there being no intervening rights of third parties by sale or chattel mortgage. But it was held in *Simpson v. Ferguson, supra,* that the manner of mortgaging growing crops under section 2955, and following, of the Civil Code is an exclusive mode and covers every case of a mortgage given upon that class of property. It was further held that "while it is perfectly true that growing crops may be either personal or real property, according to the circumstances, and while . . . . a mortgage of the land gives a lien upon everything that would pass by a grant of the land, which includes crops growing thereon, it is, nevertheless, well established that such lien, so far as the growing crops are concerned, is limited in its effect to the crops growing upon and unsevered from the land at the time of foreclosure. It does not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof. Until the latter event, where, as in this state, the mortgage creates no estate in the mortgagee, but confers only a lien upon the property, the mortgagor is entitled to such crops, with the same absolute right and dominion over them as if the mortgage did not exist." In that case, the mortgage was expressly made a lien upon the rents, issues, and profits, but, before suit to foreclose, the mortgagor had given a

chattel mortgage on the growing crops, but it was held that "the mortgagor being in possession of the land, and entitled as of right to the crops grown thereon, it was competent for him to sell or mortgage, or otherwise dispose of them, and convey a good title thereto as against the mortgagee of the land or his assigns, at any time prior to the foreclosure of the latter's mortgage."

In the case at bar, the mortgagee had no lien upon the crops by the express terms of his mortgage. The decree of foreclosure was not entered until December 8, 1896, long after the crops were gathered, and the deficiency was not ascertained until upon sale under the decree. The authority of the receiver and the power of the court over the crops, even where the mortgage undertakes to subject the rents, issues, and profits to the mortgage, it is thus seen are very much circumscribed under our law. Where the mortgage is silent upon the subject the power given the court or receiver must come alone from section 564 of the Code of Civil Procedure, and upon this section alone must respondent rely. In the recent Bank of Woodland case, *supra*, the question of the right of the receiver to hold the crops by virtue of his appointment alone, and to apply their proceeds to the deficiency judgment after having reduced them to possession, and whether such possession under the appointment as receiver gave the lien, received some attention. Speaking of the effect of the appointment being treated as a sequestration of the property mentioned in the order of appointment, it was said: "The cases in which that principle was declared are mainly cases in which complainants at whose instance the receivers were appointed had some estate in, or some right to, or lien upon the property involved prior to and independent of the appointment of the receiver. . . . . In all such cases the complainants have estates or interests in the property, or liens thereon, independent of and not created by the receivership, and the receiver is appointed to preserve and enforce their pre-existing rights. But in the case at bar the appellant, under his mortgage contract (it did not purport to mortgage the rents, issues, and profits) and the laws of this state, had no estate or interest in or lien upon the growing crops prior to and independent of the receivership; and the rule contended for by him as above stated should not be extended to such a case."

We do not think it was ever intended by section 564, *supra*, to create a new lien by the mere appointment of a receiver, in a case like the present one; or that, when appointed for any proper purpose (as he may be to restrain the commission of waste, for example), he may be empowered to take possession of the crops of the mortgagor and apply them to the mortgage debt; nor do we think that, having taken possession under such appointment, any lien is thereby acquired for any such purposes. Any other view would, we think, in effect create a new contract for the parties and give a lien upon property not included in the mortgage. As there was no showing by the plaintiff or allegation in the complaint, except that the mortgaged property was probably insufficient to pay the mortgage debt, there was no sufficient cause for the appointment of a receiver; and, as the receiver had no authority to take possession of and harvest the crops, it follows that the court had no authority to apply the proceeds of the sale of the crops to the payment of the deficiency judgment. The administrator was entitled to these proceeds as property of the estate. The deficiency judgment was payable only in due course of administration, and gave no lien upon the crops or their proceeds. The unpaid balance of plaintiff's judgment became the subject of a claim against the estate, and could be paid only as any other claim under proper proceedings.

2. The complaint was twice amended and demurrers were interposed. It is objected to the second amended complaint that it did not allege facts sufficient to constitute a cause of action, and that it appears thereby that plaintiff had not legal capacity to sue, and failed to show that plaintiff was the owner and holder of the note and mortgage.

It was alleged in the second amended complaint and not denied in the answer, that the note and mortgage were executed by defendant's intestate to George L. Locke, plaintiff's intestate; that the latter died December 9, 1895, and that "after due proceedings had in this court this plaintiff was, by order of this court, duly given, made, and entered, appointed administratrix of the estate of the said George L. Locke, deceased, and thereafter duly qualified as such administratrix by taking the oath of office and giving bonds as required by law." It is not enough that it does not sufficiently appear from the complaint

that plaintiff had capacity to sue. It must not appear there-from that she has not such legal capacity. The omission can only be taken advantage of by answer. (*Swamp etc. Dist. No. 110 v. Feck,* 60 Cal. 403; *Miller v. Luco,* 80 Cal. 257; *Wilhoit v. Cunningham,* 87 Cal. 453.)

There is nothing in the point that plaintiff is not alleged to be the owner and holder of the note and mortgage On their face they are made to plaintiff's intestate, and were in plaintiff's possession as administratrix and were offered in evidence. An averment that plaintiff was the owner and holder was unnecessary. (*Bank of Shasta v. Boyd,* 99 Cal. 604.)

3. Appellant claims that the motion for a new trial should have prevailed: (*a*) Because there was no evidence of nonpayment other than the promissory note itself, which was not identified, with its indorsements of payments; and that introducing the note was making a witness of plaintiff's intestate. (Citing Code Civ. Proc., sec. 1880, subd. 3.) This section of the code does not apply. (*b*) The denial of nonpayment is made on want of information to answer the allegation of nonpayment. The evidence of nonpayment was the introduction of the note, on which certain payments were indorsed, as shown in the complaint. The objection made to this evidence was that it was incompetent, irrelevant, and immaterial, because it was not shown that the indorsements were made by authority of any-one, or that they were "all the indorsements that should be upon the note, and were not proper evidence of what the payments upon the note were." The court found that the allegation of nonpayment in the complaint was true. There was, we think, evidence of nonpayment—enough to support the finding. Possession of the note by plaintiff was some evidence of nonpayment.

4. It is complained that the findings of fact were embodied in the decree. This was permissible (*Hopkins v. Warner,* 109 Cal. 133); and we think the findings support the judgment of foreclosure.

The account of the receiver shows that the expenses incurred by him all related to the harvesting, protection, and sale of the grain; nothing is charged for his services. While we have held that the court had no authority to empower him to do this

work, we cannot agree with appellant that he should pay over the entire proceeds of the crop. There is no suggestion that he failed to harvest the crops economically and with as little cost to the defendant estate as the administratrix could have done. He was acting at least under color of authority. It was held in *Staples v. May,* 87 Cal. 178, where a receiver in a foreclosure proceeding had mined ores on ground not the subject of the mortgage, that as a trespasser he was liable only for the net proceeds of the ore extracted. We do not think the receiver in this case should be held to any greater liability.

Our conclusion is, that the decree foreclosing the mortgage should be affirmed; that the order settling the receiver's account should also be affirmed; but that the order directing the net proceeds of the crops to be applied to the payment of plaintiff's deficiency judgment should be modified so as to direct that such proceeds be turned over to defendant's administratrix as assets of the estate.

Haynes, C., and Belcher, C., concurred.