[Civ. No. 2747. Fourth Dist. July 16, 1941.]

ANNA BAUMANN, Respondent, v. H. O. HARRISON et al., Defendants; W. G. LANE et al., Appellants.

C. H. Scharnikow and Wm. J. Clark for Appellants.

Thomas F. McCue for Respondent.

KELLY, J., *pro tem.*—In the month of May, 1930, H. O. Harrison and Daisy Harrison, husband and wife, made, executed and delivered to the Bank of America National Trust & Savings Association of California, trustee, in favor of Lane Mortgage Company, a corporation, as beneficiary, a deed of trust upon certain real estate therein specifically described and commonly known as the Commercial Club Building at Eleventh and Broadway, in the city of Los Angeles, California. The deed of trust was duly recorded. It secured a series of 225 promissory notes in various amounts aggregating $500,000, and ranging from a principal sum of $500 to one of $100,000, and each identified by a serial number. These notes are frequently referred to in the briefs and the reporter's transcript, as "bonds," and on their face are designated "First Lien Gold Bonds." They were signed by the Harrisons as makers, payable to the Lane Mortgage Company, and bear interest at the rate of 7% per annum evidenced by

coupons. The Lane Mortgage Company issued certificates of assignment to various individuals, approximately seventy-five in number, by the terms of which they sold and assigned to the purchasers, referred to throughout the proceedings as "bondholders," certain of the promissory notes described by serial numbers. The certificates of assignment provided that the original notes or bonds were to be held by the Lane Mortgage Company for collection. Four of these notes were assigned to the plaintiff, Anna Baumann, described by serial numbers and in the principal sums of $5000 and $1000, aggregating $8000. Lane Mortgage Company, throughout the various transactions was the *alter ego* of W. G. Lane who owned substantially all of the stock in the company. The certificates of assignment provided that the Lane Mortgage Company retain possession of the notes for collection on behalf of the several assignees, which was done. The Lane Mortgage Company constituted itself trustee for the benefit of its assignees in the collections of any and all moneys and things of value which came into its hands as income, rental or otherwise, as proceeds of the real property described in the deed of trust. The record is silent as to any acceptance or rejection of the trust by the bank prior to the filing of this action. The real estate described in the deed of trust, and the buildings thereon, were utilized as a club, known as the Cabrillo Club, to facilitate the operation whereof furniture, furnishings, ranges, dishes and equipment were placed upon the premises. None of these articles of personal property, nor the good will of the club were embraced as security for the series of promissory notes.

In August, 1931, the Harrisons conveyed the real estate to B. L. Vaughn who assumed and agreed to pay the indebtedness evidenced by the 225 promissory notes. Vaughn conveyed to the Cabrillo Holding Corporation which in turn assumed and agreed to pay the indebtedness. Cabrillo Holding Corporation, on January 6th, 1933, conveyed to the defendant Perry who accepted the deed as the nominee of the appellants W. G. Lane and Lane Mortgage Company. Perry paid no part of the consideration out of his own funds and accepted the deed as nominee of appellants with full knowledge of the trust existing between the appellants and plaintiff and the other bondholders and agreed with Lane that he would pay into Lane's office all income from the property for the benefit of the bondholders. This deed was delivered, not

to Perry, but to the Lane Mortgage Company and remained in the files of the corporation until received as an exhibit in this action. The deed of January, 1933, was not intended to and did not merge the deed of trust with the title but on the contrary the deed of trust securing the $500,000, evidenced by the several promissory notes remained in full force and effect. In the negotiations culminating in this deed of January, 1933, the appellants W. G. Lane and the Lane Mortgage Company, Vaughn and the Cabrillo Holding Corporation, only, participated and the appellants promised and agreed to hold harmless in consideration of the delivery of the deed, Vaughn, the Cabrillo Holding Corporation and Cabrillo Club of California from any deficiency judgment arising out of such portion of the notes and beneficial interest in said deed of trust on said date held by the appellants, to-wit, promissory notes in the principal sum of $27,000. All these interests in the promissory notes held by the appellants, as aforesaid, were transferred and assigned by the appellants subsequent to January 6, 1933, and prior to the filing of this action on March 18, 1937. But some interests had been reacquired by the appellants and at the time of the filing of this action they owned interests in notes in the aggregate sum of $3684.

On January 6, 1933, Perry went into possession of the premises as the nominee of the appellants and proceeded to conduct the affairs of the club thereon located, making collections on certain portions of the building and distributing these collections in part to the appellants and in part to himself. Those portions of the rental not collected by Perry were paid directly by the tenants to the appellants. No part of the rentals collected either by Perry or the appellants was paid to the holders of the promissory notes either on account of principal or interest. At the request of Lane the property was taken in the name of Perry and with his consent on behalf of the bondholders. Although certain sums thus collected were in the hands of the appellants, the taxes on the property were not paid and on August 25, 1937, the unpaid taxes for the years 1931–32 to 1936–37, inclusive, amounted to $65,122.41. Principal and interest being in default on the promissory notes held by the plaintiff, she demanded of appellants that they reveal to her the names of her fellow bondholders and that appellants join with her in an action to foreclose.

Appellants declined to comply with this request, but on the contrary, upon the filing of this action to foreclose the trust, they answered, resisting the foreclosures and praying that plaintiff take nothing by her complaint. The bank answered refusing to act as trustee. Thereafter one R. E. Allen was appointed trustee by order of court.

The furniture, furnishings and equipment standing on the real estate were claimed by various parties, including Perry, the appellants and the plaintiff. At the time of judgment, from which this appeal is taken, litigation was pending to determine the ownership of the personal property. The trial court found that the reasonable value of the use of the furniture, furnishings and equipment from January 5, 1933, to and including April 28, 1937, was the sum of $4000. On the last date indicated possession was taken by receivers. In its judgment the trial court stayed execution to the extent of $4000 until ownership and right to compensation for the use of the furniture, furnishings and equipment could be determined. The issues with reference to the personal property were, of course, not determined in this action. In the pending action, however, it developed that the personal property was the subject of a trust indenture securing bonds of which the appellant W. G. Lane owned approximately six-sevenths and that on April 19, 1936, the personal property was sold by a commissioner appointed in proceedings to foreclose this last mentioned trust indenture. The personal property was purchased by W. G. Lane in the name of B. W. Goes, his secretary, who served also as secretary of Lane Mortgage Company. In the accounting by the appellants of moneys received by them in the form of income from the building, they attempted to charge against the funds in their hands collected from the building, as aforesaid, on behalf of the holders of the promissory notes held by the plaintiff and others, sums of money expended by them in protecting their interests in the personal property and in acquiring title thereto in the foreclosure of the trust indenture on the personal property.

At the conclusion of the trial in chief of the instant case, the lower court filed its memorandum of decision indicating the court's view that the appellants should account to the plaintiff and the note holders generally for money and other things of value received by appellants. This memorandum, however, does not constitute the formal findings of fact and conclusions of law upon which the judgment herein is founded

and appears to be of interlocutory character merely. Thereafter the trial court made its "Order of Reference and Accounting" wherein it was ordered that an accounting be taken between the appellants and plaintiff and appointed one Sutherland as accountant and referee. The accountant having completed his labors on May 3, 1938, the plaintiff gave notice that she would on May 10, 1938, move the court to receive and approve the report and return of the referee. All parties concerned came into court on May 10th and objections having been made to the proceedings had by the accountant out of court, the court proceeded to take an accounting itself.

█ We are supplied with the reporter's transcript reporting only the proceedings had in connection with such additional evidence as the court took on the accounting phase of the case. These proceedings were had on April 13, May 10, 18 and 19, all in the year 1938. The preamble to the findings of fact and conclusions of law herein recite that twenty-seven days in the year 1937 were devoted to the trial of this action. This recital is not challenged and it therefore follows that wherein it is contended that the evidence is insufficient we must assume that evidence sufficient to support the findings was received at the trial not reported to us, unless evidence appearing in the reporter's transcript with which we are supplied forces a conclusion otherwise. It may be assumed on this appeal that evidence was received during the twenty-seven unreported days in 1937 sufficient to sustain any finding or conclusion by the court now challenged on the ground of insufficiency of evidence. It will be presumed that the omitted evidence authorized the decision unless there is something in the record to overcome that presumption. (*Messer* v. *Tait's, Inc.,* 121 Cal. App. 698 [9 Pac. (2d) 536]; *Faris* v. *Bank of America,* 102 Cal. App. 420 [283 Pac. 99].) A separate appeal was taken by the defendant Perry in which the court is supplied with a complete transcript. The parties, however, did not stipulate that such transcript might be utilized in this appeal, but on the contrary, the respondent expressly declined to so stipulate.

█ It was the duty of the appellants to furnish the court with a complete record. (*Haase* v. *Central Union H. S. Dist.,* 27 Cal. App. (2d) 319 [80 Pac. (2d) 1044].) █ Appellants cannot rely on the amendment to rule IX which went into

effect on January 4, 1939. In this case the demand for transcript was made on August 15, 1938.

The complaint in this action was filed March 18, 1937, praying the foreclosure of the trust deed and for declaratory relief. Issues of fact being joined the trial commenced on June 17, 1937. Allen was appointed trustee on June 21, 1937. He accepted the trust on August 25, 1937. He exercised the power of sale contained in the deed of trust and sold the *corpus* of the trust. The plaintiff having filed certain amendments to her complaint prior to the sale, filed a supplemental complaint, subsequent thereto, reciting the sale by and under the power of sale and praying that the appointment of Allen be confirmed, that his sale be approved and confirmed, that a commissioner or receiver be appointed, and for money judgment against the several defendants, and for other relief. The cause being again at issue the trial was resumed. The plaintiff having had judgment, W. G. Lane and Lane Mortgage Company separating themselves from the other judgment debtors, took this appeal from that part of the judgment which decrees them indebted to the plaintiff in the sum of $12,584.33.

The appellants complain that the judgment is excessive and contrary to the evidence. Upon taking testimony as to the amount of money, if any, held by these appellants and by defendant Perry, who has taken a separate appeal, as trustees for the plaintiff, certain credits claimed by these appellants were allowed and others rejected, leaving the entire sum for which judgment was entered as $12,584.33. The credits allowed total $1290.08. ■ The first item of claimed credits disallowed by the court was the amount covered by two checks to B. L. Vaughn for deeds, supplies, etc., totaling $400.

As we have seen, the *corpus* of the trust was deeded to Perry as the nominee of the appellants. The court found that Perry received and held title to this real estate in trust ·for the bondholders, including the plaintiff. We have also seen that the real estate conveyed by the trust deed was occupied as a club. When appellants, through their nominee Perry, acquired the property, they purchased from Vaughn supplies on hand, groceries and other materials. It must be kept in mind that the real estate alone was held as security for the total debt due the bondholders and evidenced by the 225 promissory notes and deed of trust. Neither the good will of the club nor the furniture, fixtures, nor the equipment

therein, was available to the bondholders as security under the deed of trust. When Perry acquired these various items of personal property they were not impressed with the trust created by the deed on behalf of the bondholders. This plaintiff had no interest whatever as beneficiary, or otherwise, in the personal property in so far as the deed of trust is concerned. This personal property was held in trust as security for the bonds therein involved, six-sevenths of which were owned by Lane. It cannot be said that Lane, or his nominee Perry, could charge to this plaintiff or her fellow bondsmen the expenses of acquiring the personal property, the benefits of ownership in which were acquired by Lane.

▮ While the personal property was acquired by Perry as nominee of Lane and title thereto vested in the purchaser unincumbered by the lien of the trust deed securing the plaintiff's bonds, nevertheless the trial court found that $4000 should be allowed for its use payable to the owner of such personal property as determined by the court in the suit now pending in the lower court. Of this we approve but we cannot allow as a credit in the accounting both the reasonable value of the use of the personal property and the cost of its acquisition.

Five items of expense aggregating $4,314.32 were claimed by the appellants as a set-off in the accounting and disallowed by the trial court. All of these charges were for obligations and payments incurred or made by the appellants in resisting the foreclosure of a trust indenture by virtue of which the personal property was made subject to a lien securing a loan of $350,000 represented by bonds, six-sevenths of which were owned by Lane. This trust was entirely separate and distinct from the trust impressed on the real estate securing the bonds, four of which were assigned to the plaintiff and to foreclose which the present action was instituted. The mere fact that the property consisting of furnishings was used in the operation of the Cabrillo Club on the premises subject to the trust herein foreclosed does not entitle these appellants to charge against the plaintiff the cost of resisting, by the appellants, a suit to foreclose a trust indenture in litigation foreign to that in the instant litigation. It may be that the operation of the club on the premises held in trust for the benefit of the plaintiff and her fellow bondholders enhanced the value of the *corpus* of the trust. But in such event the equitable solution

was the allowance of a reasonable sum for the use of the personal property and not by charging the plaintiff with the cost of defending title to such personal property which, as we have seen, was not a part of the *corpus* of the trust in the instant litigation. The defense of the title to the property was the problem of the appellants and not of the respondent.

Appellants claimed a further set-off in the amount of $480.41, which was rejected by the trial court. It seems that in 1936, the bondholders demanded possession of the real estate held in trust for them from the defendant Perry who was then in possession thereof.

A committee of the bondholders was appointed to represent all thereof. The record is far from clear as to the authority of this committee to act on behalf of all the bondholders. However, they selected an attorney and proceeded to acquire the property impressed with the trust in the instant litigation by foreclosing a junior deed of trust in the sum of $5000. The defendant Lane was the owner and holder of the junior trust deed and note secured thereby. Lane assigned to them the junior trust deed and advanced money to pay the expenses of foreclosure. The junior lien was foreclosed by exercise of the power of sale. The questioned item of $480.41 covers counsel's fees and costs in this foreclosure of the junior lien. Two insurmountable barriers bar the appellants' claim. First, the appellants do not invite our attention to any portion of the reporter's transcript now available. Hence it cannot be determined whether or not the claims are valid or reasonable as to amounts. Second, the statutes prescribe the methods authorized for the foreclosure of a deed of trust. The devious method of foreclosing a junior lien in order to acquire title to property impressed with a senior lien is not a prescribed method. It not being shown that this plaintiff acquired any benefit thereby, the claim was properly rejected. We are not required to search the record for evidence tending to sustain the claim to which our attention has not been specifically invited. (*Faris* v. *Bank of America, supra.*)

 Appellants also claim credit for $500 alleged to have been paid by them to one Mrs. Townsend, the wife of one of the members of the committee of the bondholders hereinbefore referred to. Appellants claim that Mrs. Townsend was used as an auditor at the suggestion of ''some of the board.'' The record does not disclose any authority vested in ''some of the

board'' or in the appellants to employ an auditor. The scanty evidence available was not sufficient, in the opinion of the trial court, to sustain the claim. In stating their accounts, ''it is the duty of the trustees to support every item of their account, and that wherever they fail to support the correctness of a charge or a credit by satisfactory evidence, the item must be disallowed.'' (*Purdy* v. *Johnson,* 174 Cal. 521, 531 [163 Pac. 893].)

 Appellants complain that $590 is charged against them in the account. The appellant Lane contends that Perry was delinquent in making payments of receipts from the tenants of the building and that to adjust the matter he, Lane, paid $590 into the trustee account, thus, in effect, constituting a loan of that sum by Lane to Perry. The deposit was made on June 30, 1936. The attorney representing these appellants at the trial admitted all items appearing in the accountant's report as having been received by the appellants commencing January 13, 1936, to and including October 1, 1936. The appellants are bound by the stipulation of their counsel. Furthermore, if Lane placed the money in the trust to remedy Perry's delinquency, his demand should be against Perry and not against the beneficiaries of the trust. Respondent seeks a reduction of the credits allowed the appellants to the extent of $328.33, being 5% on moneys collected by them on behalf of the beneficiaries of the trust, on the ground that the trustee was faithless and therefore not entitled to compensation. A respondent who has not also appealed, cannot, on appeal by the opposing party, ask a court of review to consider errors against him.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 11, 1941.