[Civ. No. 3518. Fifth Dist. Aug. 24, 1977.]

MORLEY TURNER et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
BERNARD E. COOKE et al., Real Parties in Interest.

[Civ. No. 3528. Fifth Dist. Aug. 24, 1977.]

BERNARD E. COOKE, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
MORLEY TURNER et al., Real Parties in Interest.

## Counsel

Thorne, Clopton, Herz, Stanek & Manchester, John Thorne, John R. Hetland and Anthony G. Wilson for Petitioners in Civ. No. 3518 and for Real Parties in Interest Turners in Civ. No. 3528.

Sims & Solomon and Gabriel W. Solomon for Petitioner in Civ. No. 3528 and for Real Party in Interest Cooke in Civ. No. 3518.

No appearance for Respondent or for Real Party in Interest Great Western Savings and Loan Association.

## Opinion

**BROWN (G. A.), P. J.**—Upon the petition of Morley Turner and Janet Turner in 5 Civil No. 3518 we issued an order directing the Superior Court of Kern County to show cause why it should not be prohibited from confirming a proposed sale by its rents and profits receiver of the property generally known as the Bakersfield Inn for $3.7 million. Real party in interest Bernard E. Cooke filed his return and reply thereto; concurrently Cooke filed a petition for writ of mandate upon which we issued an order directing the superior court to show cause why the Bakersfield Inn's liquor license No. 47-29199 should not be included in the proposed receiver's sale; real party in interest Turners filed their return and reply thereto. The two matters have been consolidated for consideration and decision.

In sum, the ultimate issues are: (1) the power of the superior court to authorize a rents and profits receiver appointed at the behest of a beneficiary under a deed of trust (Great Western Savings and Loan Association) in a foreclosure proceeding to take possession of property which is not a part of the security for the debt, and (2) the authority of the superior court to authorize its rents and profits receiver to sell all of the property in his possession (part of which is security for the debt and part of which is not) while judicial and nonjudicial foreclosure proceedings are pending.

The predecessors in interest of Turners and Cooke in the Bakersfield Inn property on February 8, 1971, executed a promissory note in favor of Great Western Savings and Loan Association (hereinafter Great Western) in the amount of $1.3 million. The installment note was secured by

a deed of trust to the real property, improvements and trade fixtures, "TOGETHER WITH all interest which Trustor now has or may hereafter acquire in or to said property and in and to: (a) All rents, issues, profits, royalties, tolls, earnings and incomes therefrom . . ." all of which was referred to as "the property."

Paragraph 16 of the master provisions in the deed of trust further provided in pertinent part that "Upon default by the Trustor . . . Beneficiary may . . . without regard to the adequacy of the security for the indebtedness secured hereby, either personally or by attorney or agent . . . or by receiver to be appointed by a court, (a) enter into possession and hold, occupy, possess and enjoy the property . . . (e) take, receive and collect all or any part of the rents, issues, profits, royalties, tolls, earnings, income and installments . . . as it becomes due and payable. After paying such costs of maintenance and operation of the property as it in its judgment may deem proper, Beneficiary may apply the balance upon the entire indebtedness then secured hereby." It is to be noted that this provision authorizes Great Western to take possession of all of the security including rents and profits.

The record title to the property passed by mesne conveyances to Cooke and Turners separately and they became embroiled in a quiet title action (action No. 140717) over the title to the real and personal property constituting the Bakersfield Inn business operation. On May 4, 1977, after a three-month trial, the trial court entered a judgment that Cooke is the sole owner of the entirety of that certain business together with that certain real and personal property known as the Bakersfield Inn, excluding only a certain liquor license No. 47-29199 and all the cash, liquor and food inventory and certain business records and filing cabinets. The court held that the excluded property is owned by Turners. An appeal by each party from that judgment is pending and undetermined.

The deed of trust being in default in excess of the sum of $160,000 on March 16, 1977, Great Western filed the complaint in this action, being action No. 146104, seeking judicial foreclosure of the deed of trust, praying for the appointment of a receiver to take possession of and operate the property and collect the rents, issues and profits pursuant to the terms of the deed of trust, and for a deficiency judgment against Turners and Cooke. Great Western seeks also to accelerate the due date of the entire obligation which amounts to more than $1.1 million.

Great Western is in addition pursuing a concurrent course of nonjudicial foreclosure by having recorded on April 8, 1977, a notice of default and election to sell the property on or after August 8, 1977 (see Civ. Code, § 2924c).[1]

Upon Great Western's request a hearing was held on March 16, 1977, at which all parties were represented and after which the court by stipulation appointed David Ray as the receiver and ordered him to "take possession of that certain real property and all the improvements located thereon and therein in the City of Bakersfield, County of Kern, State of California, commonly known as the Bakersfield Inn . . . and more specifically described in plaintiff's complaint, and care for, preserve, and maintain the property, and incur the expenses necessary for the care, preservation and maintenance of the real property and personalty located thereon" and to "collect the rents due and hereafter coming due from the tenants of any portion of the real property and the improvements located thereon," and to pay taxes and assessments and interest and principal on the note secured by the deed of trust now due or to become due. The court further authorized the receiver to operate and conduct the business of managing, maintaining and collecting the rent from all the tenants in and to said real property and to employ labor as may be necessary, purchase supplies and to incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses. The order was filed on March 24, 1977.

The liquor license was not part of the security for the debt which the deed of trust secured. In order to gain the advantage of operating the cocktail lounge as an integral part of the business the receiver on March 25, 1977, petitioned the court for approval of an agreement whereby Turners would operate the cocktail lounge business and pay the receiver 10 percent from that business. On the theory that the right to possession and use of the liquor license passed to the receiver upon his appointment, Cooke on March 30 filed an ex parte petition to order Turners to surrender the license to the receiver. On April 1, the court ordered the receiver to take possession of the liquor license and to operate the cocktail lounge business based on the 10 percent formula theretofore offered by Turner.[2]

---

[1]At the time of issuing the order to show cause this court issued an injunctive stay order enjoining Great Western from proceeding with the nonjudicial foreclosure until further order of this court.

[2]The court in its minute order made reference to the appointment of Ray as the liquor license receiver in action No. 140717 (the quiet title suit) as well as in the foreclosure

On May 17, 1977, after a hearing held on May 5 pursuant to Cooke's noticed motion, the court issued an order authorizing the receiver to sell the Bakersfield Inn subject to confirmation. The proposed sale encompasses all tangible and intangible real and personal property and assets of every kind and nature of that certain motel, restaurant, banquet and cocktail lounge business commonly known as the Bakersfield Inn, excepting only the Bakersfield Inn liquor license No. 47-29199. The total purchase price is to be $3.7 million with $550,000 in cash and the remainder in promissory notes, including the assumption of the Great Western deed of trust.

The proposed purchaser is Westwater-Bakersfield, Inc., composed of a group of Canadian citizens who had not as of the date of the order authorizing the sale filed articles of incorporation in California and in fact did not do so until June 23, 1977. Nothing appears with regard to their financial responsibility or business experience.

On June 9 Cooke noticed a motion to confirm the sale to be heard on June 17. On June 17, pursuant to Turners' petition, this court issued a stay order halting the hearing for confirmation of the order authorizing the sale.

Lastly, it is noted that Great Western appeared at the hearing in the trial court on May 5 and opposed the sale on the ground that it should not be authorized in the absence of the consent of all interested parties.

---

action, No. 146104. While the main thrust of Cooke's position herein does not rely on this appointment in the quiet title action, it is appropriate to comment that the record before us cannot support such an appointment.

Code of Civil Procedure section 564, subdivision 4, provides for the appointment of a receiver pending an appeal to preserve the property during appeal or to force the judgment debtor to dispose of the property according to the judgment. Since the judgment in the quiet title action directed that the liquor license belonged to Turner, the only showing that would support appointment of a receiver in the quiet title action is to preserve the property pending appeal. There is nothing in this record indicating that such a showing has been made. Secondly, an order upon ex parte application " . . . should only be issued in cases of emergency which make it imperatively necessary to act at once without notice." (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 249, p. 1637) and the appointment of a receiver is a drastic remedy and should be exercised with caution. (*Hoover* v. *Galbraith* (1972) 7 Cal.3d 519, 528 [102 Cal.Rptr. 733, 498 P.2d 981].) No such showing has been made here.

Moreover, the stringent procedural requirements of California Rules of Court rule 238 which must be met before an ex parte appointment of a receiver can be approved were not satisfied in this instance. It also appears that an appeal was taken from the formal order signed by the judge on April 21 and entered on April 25 and, finally, the trial court purported to vacate that order on August 12 (entered Aug. 16).

Adverting to the merits, Code of Civil Procedure section 564[3] contains a principal source of authority for trial courts to appoint receivers. In addition there are other special statutes authorizing the appointment of receivers under more specific situations. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 236, p. 1629.)

■ The requirements of Code of Civil Procedure section 564 are jurisdictional, and without a showing bringing the receiver within one of the subdivisions of that section the court's order appointing a receiver is void. (*Rondos* v. *Superior Court* (1957) 151 Cal.App.2d 190, 195 [311 P.2d 113].) There was no showing herein at the time of the hearing under subdivision 2 of section 564 that "the property is probably insufficient to discharge the mortgage debt." (*Bank of Woodland* v. *Stephens* (1904) 144 Cal. 659, 660 [79 P. 379].) ■ Nevertheless, such a showing is not required where the creditor, as here, seeks to specifically enforce a provision of the mortgage or deed of trust assigning the rents and profits from the security to the creditor upon default or specifically providing for the appointment of a receiver to take possession of the security and collect the rents and profits therefrom. (*Title Guarantee & Trust Co.* v. *Monson* (1938) 11 Cal.2d 621, 625 [81 P.2d 944]; *Barclays Bank of California* v. *Superior Court* (1977) 69 Cal.App.3d 593, 598-600 [137 Cal.Rptr. 743].) Although couched in terms of specific performance of a contractual provision, jurisdiction of the court to appoint a receiver under such circumstances is not derived from an agreement between the parties but rather from the omnibus statutory provision contained in subdivision 7 of section 564. (See fn. 3, *ante.*)

■ It is settled that "[a] receiver may not be appointed except in the classes of cases expressly set forth in the statutes. (*Miller* v. *Oliver* (1917) 174 C. 407, 410, 163 P. 355; *Takeba* v. *Superior Court* (1919) 43 C.A. 469, 475, 185 P. 406." (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional

---

[3]Code of Civil Procedure section 564 provides in pertinent part:

"A receiver may be appointed, in the manner provided in this chapter, by the court in which an action or proceeding is pending in any case in which such court is empowered by law to appoint a receiver.

"In superior courts a receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases:

". . . . . . . . . . . . . . .

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt;

". . . . . . . . . . . . . . .

"7. In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

Remedies, § 236, p. 1629.) "[W]here one's entitlement to a receiver is not otherwise established, a mortgagee or beneficiary of a trust deed may not by stipulation or consent, however manifested, confer jurisdiction upon the superior court to appoint such a receiver." (*Barclays Bank of California* v. *Superior Court, supra,* 69 Cal.App.3d 593, 600; *Mines* v. *Superior Court* (1932) 216 Cal. 776, 778 [16 P.2d 732].)

■ On the other hand, if the rents, issues and profits are not part of the security for the debt, not having been contractually assigned for that purpose, the court has no power under section 564 to authorize the receiver to take possession of the rents, issues and profits and apply them to the debt. (*Locke* v. *Klunker* (1898) 123 Cal. 231, 235-238 [55 P. 993].) To do so would be to make a new contract for the parties extending the lien over property not actually mortgaged. (*Locke* v. *Klunker, supra.*) Thus, the contractual agreements and the pleadings are factors to take into evidential consideration in determining the purpose for which the receiver was appointed and the power of the court to extend the receiver's grasp to property which may be beyond his reach. (*Barclays Bank of California* v. *Superior Court, supra,* 69 Cal.App.3d 593, 599-602.)

Great Western in its judicial foreclosure complaint sought specific performance of the assignment of the rents, issues and profits provisions of the deed of trust by having a receiver appointed "pending the trial of the issues of this case, to take possession of the real property hereinabove described, to care for and operate said real property and to collect the rentals, earnings, income, receipts, revenues, issues and profits from said premises, and to pay therefrom the costs of operating said real property, the Court costs, including Receiver's fees and other charges allowed by the Court, and to pay the balance thereof to the holders of encumbrances of record relating to the said property in order of their priority until such time as the indebtedness of defendants owing to plaintiff herein is fully paid." The order appointing the receiver followed generally the language of the complaint, making plain that the purpose of the receivership was to manage and operate the property for the purpose only of collecting the rents, issues and profits and applying the same to the debt. In short, the receiver was authorized to take possession of the property for the purpose of collecting and paying over to Great Western the net rents, issues and profits.

Having decided that Ray is a rents, issues and profits receiver, we next approach the issue of the extent of property which the trial court can empower a rents and profits receiver to take into his possession by the

force of the order appointing him as receiver or by reason of subsequent orders of the court. ▉ In this connection we must, of course, keep in mind that a receiver is an agent of the court, not of the parties, and the receivership estate consisting of property which is properly in his hands is under the control and continuous supervision of the court. (*Lesser & Son* v. *Seymour* (1950) 35 Cal.2d 494, 499 [218 P.2d 536]; *People* v. *Riverside University* (1973) 35 Cal.App.3d 572, 583 [111 Cal.Rptr. 68].)

The substance of Cooke's argument is that a receiver is a receiver regardless of the purpose for which he is appointed and that pursuant to its inherent equitable powers the court can expand the receivership to include property not originally included therein, particularly where the possession of such property is necessary or convenient to the operation of a business in the hands of a rents and profits receiver; otherwise, no rents and profits could be produced. However, the deed of trust does not guarantee that rents and profits will be generated by the land and improvements thereon. We have been cited to no authority for the proposition that a court has the power to authorize a receiver in the course of the performance of his duties to reach out and latch onto the appropriate property to the use of the receivership which is not properly a part of the receivership estate.[4] On the contrary, what authority there is on the subject points unerringly to a contrary result.

In this regard, the words of Mr. Justice Cardozo in *DuParquet Huot & Moneuse Co.* v. *Evans* (1936) 297 U.S. 216 [80 L.Ed. 591, 56 S.Ct. 412] are instructive. In that case the court held that the appointment of a rents and profits receiver pursuant to a mortgage foreclosure action was not an act of bankruptcy because such a receiver is not a full equity or general receiver within the meaning of the law: "A receivership in a foreclosure suit is limited and special. The rents and profits are impounded for the benefit of a particular mortgagee to be applied upon the debt in the

---

[4]Cooke's reliance upon *Goes* v. *Perry* (1941) 18 Cal.2d 373 [115 P.2d 441] as support for this position is misplaced. That case was one aspect of complicated litigation involving a large building and the furniture and fixtures therein being operated as a club. (See *Baumann* v. *Harrison* (1941) 46 Cal.App.2d 73 [115 P.2d 523]; *Baumann* v. *Harrison* (1941) 46 Cal.App.2d 84 [115 P.2d 530]; *Baumann* v. *Bedford* (1941) 18 Cal.2d 366 [115 P.2d 437].) A deed of trust covering the building only had been foreclosed. In *Baumann* v. *Bedford, supra,* a partition action, the court appointed a receiver after the sale under the deed of trust had been consummated. *Goes* v. *Perry, supra,* involved the furniture and fixtures in the building only and was an action in claim and delivery to recover possession of the furniture and fixtures after there had been a foreclosure of a security instrument in which that personal property was security. For convenience and because the club was still being operated as a unit, the court appointed the same receiver who had been appointed in the real property partition action. In no way does this case authorize a receiver to take possession of property not legitimately part of the receivership estate.

event of a deficiency. [Citations.] The corporation retains its other property, if it has any, unaffected in its power of disposition by the decree of sequestration. The creditors retain their remedies except against the income subject to the lien. There is neither winding up of the business nor attempt to reorganize it and set it going anew." (297 U.S. 216, 221 [80 L.Ed. 591, 594].)

After explaining that an equity or general receiver takes possession of all of the debtor's assets and attempts to satisfy creditors out of those assets and may be permitted to completely reorganize the financial status of the debtor, Justice Cardozo continues: "But the situation is very different if the receivership in view is one for the foreclosure of a mortgage. In its normal operation such a receivership does not connote possession of all the property of the debtor or even all the property within the appointing jurisdiction. The mortgage may be a lien upon one parcel or a few, leaving other property of abundant value for payment of the debts. Indeed, the cases must be many where the owner of a mortgaged building, not personally liable for the payment of the mortgage debt, will hold it the part of prudence, whether he is solvent or insolvent, to let the building go." (297 U.S. 216, 223 [80 L.Ed. 591, 596].) (See also *Tuttle* v. *Harris* (1936) 297 U.S. 225 [80 L.Ed. 654, 56 S.Ct. 416].) Accordingly, the court held that the estate of a rents and profits receiver is limited to the property standing as security.

The text writers support this concept. Thus, Clark, in his treatise on receivers, states that: "Property not involved in complainant's mortgage . . . is not property in the hands of a receiver." (4 Clark, Law of Receivers (3d ed. 1959) § 936.) And Professor Osborne concurs: "Where the mortgagor conducts a business on the mortgaged premises instead of renting them or occupying them as a home the first problem is whether the business is subject to the mortgage either by virtue of its being a product of the land or of an express inclusion under the terms of the mortgage. This is so because it is clear that a mortgage foreclosure receiver cannot take into his possession or control property not covered by the mortgage, and a 'mortgage covers the land and building—not the business enterprise housed.' " (Osborne, Mortgages (2d ed. 1970) Receivership, § 157, p. 266.)

California authority is in accord. For example, the court in *Cal. T. I. & T. Co.* v. *P'dm't. Cable Co.* (1897) 117 Cal. 237, 240-241 [49 P. 1], limited the receiver's possession to property specifically referred to in the mortgage: "The mortgage did not cover the assets of the corporation

defendant therein, beyond the property as hereinbefore stated, and the receiver was appointed, not to collect the debts due the corporation defendant, but only to take possession of the mortgaged property, operate the road, etc. [¶] When, therefore, he took possession of the money of the defendant and collected money due to it before his appointment, and which was not covered by the lien of the mortgage, he transcended his authority as receiver, and it was no defense to the motion for him to say he had mingled the funds thus received with those received in the course. of his receivership and had paid out the money." (See also *Locke* v. *Klunker, supra,* 123 Cal. 231—a receiver appointed under a mortgage which does not contain an assignment of rents and profits as part of the security has no authority to take possession of and collect the rents and profits.)

Again, in *Santacroce Bros.* v. *Edgewater-Santa Clara, Inc.* (1966) 242 Cal.App.2d 584 [51 Cal.Rptr. 613], the court upheld the appointment of a receiver to take possession of real property improved by a 72-room motel which was the security on a promissory note pursuant to the following provision in the trust deed: " 'Upon any such default [in payment by trustor], Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name, sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same less cost and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby and in such order as Beneficiary may determine.' " (*Id.,* at p. 585, fn. 1.) The trial court in *Santacroce* appointed a receiver with power to take possession of the property and to operate the business of the motel, including the collection of the rents. The Court of Appeal upheld that appointment. The debtor at oral argument attempted to raise the issue of the disposition of the furniture in the motel. The Court of Appeal concluded that it was not faced with that issue since the order appointing the receiver did not refer to the furniture. The debtor also argued that the order appointing the receiver empowered the receiver to seize all money which the debtor had on hand or in bank accounts at the time of his employment and was therefore overly broad. The Court of Appeal agreed and struck that portion of the order.

We agree with the reasoning of the foregoing authorities and conclude that in the absence of consent from the owners of the property

that it may be used by the rents and profits receiver, the decree *ex propio vigore* does not authorize, and the court exceeds its jurisdiction insofar as it may purport to authorize, a rents and profits receiver to take into his possession property which is not hypothecated in the deed of trust.[5]

Accordingly, in the case at bench the orders of the trial court purporting to imbue the rents and profits receiver with authority to take into his possession any property of the Bakersfield Inn which is not hypothecated under the deed of trust without the consent of those entitled to give or withhold consent were beyond its power. This property would include the liquor license, food and beverage inventories, the furniture and television sets, and perhaps other personal property the extent and nature of which does not fully appear in this record.[6]

Turning to the issue of the authority of the trial court to authorize the receiver to sell all the property in his possession, Cooke relies upon Code of Civil Procedure section 568.5 which provides: "A receiver may, pursuant to an order of the court, sell real or personal property in his possession as such receiver, upon the notice and in the manner prescribed by law for the sale of such property under execution. The sale shall not be final until confirmed by the court. Sales made pursuant to this section shall not be subject to redemption."

In authorizing the sale the trial court found that there is a substantial risk the entirety of the real and personal property of the Bakersfield Inn, excepting the liquor license, would be lost via either judicial or nonjudicial foreclosure proceedings being pursued by Great Western. The court further found that the Bakersfield Inn is currently being operated at a substantial financial loss and that there is no reasonable assurance that the court's receiver will in the future be able to operate the business without continuing monthly net financial losses. In addition, the court found that the proposed $350,000 default-curing cash downpayment ($550,000 less broker's fee) itself prima facie establishes the

---

[5]This holding, of course, does not preclude the receiver from entering into consensual arrangements with persons owning property not subject to the deed of trust to use such property in the operation of the business.

[6]It appears the personal property (other than the liquor license) which is not subject to the deed of trust is being used by the receiver with the permission of those who have an interest therein. Though the record before us is unclear in this regard, it would appear that the owner or owners thereof would be entitled to compensation from the receiver for the use of that property. (*Baumann* v. *Harrison, supra,* 46 Cal.App.2d 73, 80-81 (hg. den.) The conditions under which the liquor license is being used are unclear and subject to further judicial proceedings now in progress.

financial responsibility and financial credibility of the proposed buyer. In addition, the court concluded that the proposed sale would save petitioner Turner and Eugene Majeski (a cosigner) from the risk of personal deficiency judgments in favor of Great Western. Finally, the court found that the conditions of the proposed sale are prima facie fair and reasonable and in the best interests of Great Western and petitioner Turner and real party in interest Cooke, regardless of which of the latter may ultimately be adjudged to be the true owner of the property threatened with foreclosure.

Cooke argues that pursuant to Code of Civil Procedure section 568.5 and the inherent equitable power of the court, the court can authorize a rents and profits receiver to sell the receivership estate where the business is losing money and the equity of the debtors is threatened by foreclosure of an existing deed of trust. As in the case of the first issue, he argues that a receiver is a receiver regardless of the purpose for which he was originally appointed and that Code of Civil Procedure section 568.5 makes no facial distinction as to the type of receiver involved. He relies on a number of cases, many of which do not involve rents and profits receivers and are distinguishable on that ground. For example, cited are *Wulff* v. *Superior Court* (1895) 110 Cal. 215 [42 P. 638]—receiver during partnership dissolution; *Rosenthal* v. *Rosenthal* (1966) 240 Cal.App.2d 927 [50 Cal.Rptr. 385]—receiver in divorce action to liquidate a joint interest in property pursuant to judgment; *People* v. *Riverside University, supra,* 35 Cal.App.3d 572—receiver appointed pursuant to the Attorney General's petition for a public or charitable trust under Corporations Code section 9505 with broad powers to operate a school; *Baumann* v. *Bedford* (1941) 18 Cal.2d 366 [115 P.2d 437]—receiver in a partition action. He also relies upon *Toby* v. *Oregon Pac. R.R. Co.* (1893) 98 Cal. 490 [33 P. 550], and *McLane* v. *P. & S. V.R.R. Co.* (1895) 66 Cal. 606 [6 P. 748]. In *Toby* the court upheld a sale by a rents and profits receiver. However, the case involved perishable personal property (a decaying ship) and a judgment of foreclosure had already been entered. In *McLane* the receiver was appointed with broad power to operate a railroad for the benefit of bondholders. Aside from the roadbed the railroad would be predominantly personal property. Because of the general public nature of the business, the receiver had broader powers than other kinds of receivers (see *Title Ins. etc. Co.* v. *California Dev. Co.* (1915) 171 Cal. 227, 231 [152 P. 564]; annot. (1927) 50 A.L.R. 146) and the court upheld the authorization of the receiver to sell the railroad in view of the fact that the railroad could only be run at a loss, there were no funds to repair it, and the railroad, if unused, would simply decay.

To the contrary, Turners' principal arguments are that the court lacks power to authorize a rents and profits receiver to sell the estate; that the assignment of rents and profits provision passes only a security interest (*Childs etc. Co.* v. *Shelburne Realty Co.* (1943) 23 Cal.2d 263, 268 [143 P.2d 697]; *Lee* v. *Ski Run Apartments Associates* (1967) 249 Cal.App.2d 293, 297 [57 Cal.Rptr. 496]) and the receiver is limited to the contractual authorization contained in the deed of trust to collect the rents as additional security; that to determine the receiver's authority one must look to the purpose for which he was originally appointed and draw a sharp distinction between various types of receivers; that in any event the only thing the rents and profits receiver could possibly sell would be the security interest and not title to the underlying real property and improvements; that a rents and profits receiver as distinguished from some other types of receivers cannot liquidate or sell the security, particularly in the face of existing equities in an outstanding deed of trust and a judicial foreclosure action. They point to the fact that a receiver takes possession of property subject to all equities and liens existing as of the date of his appointment (*Allen* v. *Ramsay* (1960) 179 Cal.App.2d 843, 854 [4 Cal.Rptr. 575]) and to authorize such a sale by a receiver would conflict with traditional protections the law has thrown around mortgagors in that it would truncate the debtor's right to redemption (Civ. Code, §§ 2903, 2905; Code Civ. Proc., §§ 725a, 568.5) and would violate Code of Civil Procedure section 726 limiting the foreclosure of a deed of trust to one action. (See *Walker* v. *Community Bank* (1974) 10 Cal.3d 729 [111 Cal.Rptr. 897, 518 P.2d 329].) Also, in the case at bench Turners have filed a cross-complaint against Great Western seeking subrogation to some $600,000 Turners made in payments on the deed of trust while they were in possession of the property and prior to the appointment of the receiver. The sale, Turners argue, would likely destroy their claim.

As interesting as this unresolved issue is, we need not finally decide it in this case.

The sale authorized by the court below included all the real and personal property and the business known as the Bakersfield Inn (excluding only the liquor license). Since we have determined that it was beyond the court's power to order that property not part of the rents and profits receivership estate may be taken into possession by the receiver, it is apparent that it is beyond the authority of the court to authorize the receiver to sell property which is not part of the security without the consent of all persons having an interest therein. Accordingly, the trial court's order authorizing the present sale is in all events beyond the

power of the court and we therefore need not reach or decide the question of the limits upon the rents and profits receiver's authority to sell the receivership estate consisting of the security only under the circumstances of this case.

In view of our conclusion that the trial court did not have the authority to turn the liquor license over to the receiver and does not have the power to authorize the receiver to sell it, it follows that Cooke's petition in 5 Civil No. 3528 for writ of mandate to require the trial court to authorize the sale of the liquor license must be denied.

Let a peremptory writ of prohibition issue under the seal of this court prohibiting the respondent court from confirming the sale by the receiver of the property described in its order authorizing sale of May 17, 1977, and to take no action with regard to said order except to vacate and set it aside.

Petitioner Bernard E. Cooke's petition for writ of mandamus compelling inclusion of the Bakersfield Inn liquor license within the order authorizing sale of said business is denied and the order to show cause is discharged.

The injunctive stay order heretofore issued by this court on June 29, 1977, enjoining Great Western Savings and Loan Association from proceeding with any nonjudicial foreclosure sale pursuant to the power of sale contained in its deed of trust and from relying upon the period of time during which this injunction is in effect as part of the three months' period set forth in Civil Code section 2924c shall remain in effect until this judgment becomes final or the Supreme Court grants a hearing herein, whichever may first occur.

The order of this court dated June 29, 1977, staying all proceedings in Kern County Superior Court action No. 146104 is terminated.

Gargano, J., and Franson, J., concurred.

A petition for a rehearing was denied September 1, 1977, and the petition of real party in interest Cooke for a hearing by the Supreme Court was denied October 27, 1977.