[Civ. No. 3452.   Third Appellate District.—April 20, 1928.]

THE FIRST NATIONAL BANK OF LINDSAY (a Corporation), Respondent, v. J. C. GARNER et al., Defendants; NATIVE SON ORCHARDS CO. (a Corporation), Appellants.

C. W. Braswell for Appellant.

Avery J. Howe and Howe & McBride for Respondent.

BARTLETT, J., *pro tem.*—This action was instituted to foreclose a mortgage on certain real property in Tulare County, executed by defendants James C. Garner and S. J. C. Garner, his wife, on October 13, 1921, securing payment of a promissory note for $8,000 with interest at eight per cent per annum, payable quarterly, the note being payable on demand, and if no demand be made, then on January 1, 1924. The complaint was filed on October 13, 1925. The mortgage was recorded on October 17, 1921. The note and mortgage provided for the allowance of reasonable attorney's fee in the event of the institution of foreclosure proceedings. The particular description of the properties mortgaged was followed by the clause "together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

The defendants Garner and wife defaulted and judgment was entered against them. The mortgaged property was an orange orchard of navel and Valencia orange trees, producing crops of oranges therefrom requiring during the spring and summer months intensive care, proper plowing, pruning, spraying, and artificial irrigation. Defendant Native Son Orchards Company is a packing corporation engaged in the business of packing oranges at Lindsay in Tulare County. During the four years prior to the trial of this action on November 24, 1925, this corporation had advanced the Garners certain sums of money for the purpose of caring for the citrus trees upon the mortgaged premises, and on February 18, 1924, the Garners executed unto the Native Son Orchards Company a crop mortgage on all citrus fruit then growing on or to be grown on the mortgaged lands during the year 1924 and during each and every year thereafter until the indebtedness secured by the crop mortgage was paid, the items of indebtedness for which the crop mortgage was made security being a promissory note of J. C. Garner to the Native Son Orchards Company for $1,420, dated February 13, 1924, payable December 15, after date, with interest at eight per cent per annum, a reasonable attorney's fee if suit was instituted to collect the note, and such other moneys as might be thereafter loaned or advanced to the Garners by the Native Son Orchards Company during the continuance of the mortgage not to exceed in all the sum of $1,500 exclusive of the sum mentioned in the note of $1,420.

Plaintiff alleged that the Native Son Orchards Company has or claims to have some interest or claim on the mortgaged premises, which claim it is alleged is subsequent and secondary to the lien of the plaintiff's mortgage. By its answer the Native Son Orchards Company admits that it has and claims an interest in the mortgaged premises, by reason of the crop mortgage from the Garners of February 13, 1924, hereinbefore mentioned, denies that this crop mortgage is subsequent to plaintiff's mortgage, alleges that it had for the purpose of caring for the citrus trees upon the mortgaged premises advanced to the Garners approximately $2,372.43, that the Garners were partially insolvent and unable to care for the premises and the orange trees growing thereon, that the mortgaged property was located in an

arid district, was dependent upon artificial irrigation, that without proper irrigation and other care the orange trees would have become totally worthless and of no value, that prior to the advancement of moneys to the Garners plaintiff agreed through its agent, one S. A. Warson, that the advancements made by the Native Son Orchards Company were for the protection of the security held by plaintiff and that the same should constitute a prior lien as against that of plaintiff's mortgage, and as relief in the action the Native Son Orchards Company demanded that the crop mortgage be declared by the decree of the court to be paramount and prior to plaintiff's mortgage and for its costs.

The trial court found that the moneys advanced by the Native Son Orchards Company were not advanced under any understanding or agreement on the part of plaintiff that they were for the protection of plaintiff's security or that they would constitute a prior lien to that of plaintiff's mortgage and found that the crop mortgage was and is subsequent in effect and time to the real property mortgage of plaintiff.

The usual decree of foreclosure of mortgage was thereupon made and entered on January 19, 1926, and under this a sale of the premises described in plaintiff's mortgage was made on February 23, 1926, by the commissioner appointed to make the sale, at which sale plaintiff purchased the properties described in its mortgage for the sum of $10,009.72, which amount covered and satisfied the judgment and all costs and left no deficiency.

It appears from the transcript on appeal that on the day the action was tried it was stipulated that a receiver of the properties be appointed and that one Chester Dowell was so appointed, the order of appointment being set forth in the transcript, specifying as to his powers and duties, as follows:

"Now, therefore, it is ordered that Chester Dowell be, and he is, hereby appointed the receiver of and for the plaintiff under the order of the court to take, care for, irrigate, cultivate, spray or fumigate said property, to take the rents, issues and profits therefrom. That he shall take possession of said property described in said complaint and properly mature and raise any crops that may be raised or growing upon said trees on said property or that may hereafter grow thereon, market the same, and generally do and perform

all acts that may be ordered and sanctioned by the court or by law, and retain any funds until further order of the court.''

No question is raised or presented on this appeal concerning the appointment of the receiver or any action on his part that he may have taken by and through his appointment.

Defendant Native Son Orchards Company appeals from the judgment in the action and the whole thereof on a bill of exceptions.

Appellant urges a reversal of the judgment on the grounds: 1. Insufficiency of the evidence to justify the finding that the sum of $1,100 which had been advanced to appellant by plaintiff and used in caring for the crops of citrus fruits growing on the mortgaged lands during 1925 was a direct loan by the Native Son Orchards Company and not made for the purpose of caring for plaintiff's security; 2. Failure of the court to find the extent of the interest of Native Son Orchards Company in the crop of oranges on the trees on the mortgaged premises at the time of the trial of the action; 3. Failure of the court to find the extent of the interest of the Native Son Orchards Company in the crop of oranges to be gathered during the redemption period; 4. Error in adjudging that the Native Son Orchards Company be foreclosed of all right, title, or interest in and to the mortgaged premises; 5. Error in not adjudging that the Native Son Orchards Company was entitled to the crops matured and unharvested on the mortgaged premises at the time of the entry of judgment and would be also entitled to such crops as would mature during the period of redemption.

In support of its claim that the moneys advanced by respondent during the summer of 1925 was not a direct loan to appellant reliance is placed upon a letter of appellant to respondent which reads as follows:

"Native Son Orchards Co.

"R. O. MacDonald, Manager.

"Lindsay, California, June 29th, 1925.

"First National Bank,

"Lindsay, California.

"Gentlemen: It is understood that during the summer you will advance us approximately $1,100 for purposes of

financing the J. C. Garner place during the year. It is understood and agreed that we will advance this money to Mr. Garner under our crop mortgage and that it will be repaid out of the first money realized on the crop after picking and hauling expenses are paid, and before any money is retained by us under the crop mortgage.

"Yours truly,

"NATIVE SON ORCHARD CO.

"By R. O. MACDONALD."

There is nothing in the foregoing letter that implies there was any understanding that moneys advanced were to be considered as secured by the respondent's mortgage. It states that appellant will advance the money to Garner under its crop mortgage, and that outside of packing and hauling charges, the proceeds realized from the crop shall be devoted to repaying the money advanced. In effect it made moneys realized from the crops payable to respondent as a charge on the crops prior to appellant having any claim on crop proceeds other than packing and hauling expenses. The conclusion of the trial court that the advances were direct loans to appellant finds ample support in the evidence. The manager of appellant, MacDonald, testified there was no agreement between the bank and appellant that the crop mortgage would be prior in effect to the bank mortgage. His testimony in this regard is as follows: "Q. Did Mr. Warson or any other official of the bank tell you they would waive their real estate mortgage in favor of your crop mortgage? A. No. Q. Then you have never had any undertaking or agreement to the effect that the advancements made would be a prior lien as against the First National Bank mortgage with Mr. Warson? A. I wouldn't say that was the understanding at all."

This shows there was neither a direct nor an implied undertaking that the real estate mortgage was to be considered a subsequent lien to the crop mortgage of appellant. The following question was asked MacDonald regarding the $1,050 note which appellant executed to respondent for the money advanced: "I suppose the $1,050 note must be paid regardless of the crop that is coming in? A. When they are due I will go and pay them."

■ The question of whether the moneys advanced were a direct loan or not was a question of fact resolved by the trial court in respondent's favor, and the evidence, if there be any conflict, will not permit a reversal, where there is evidence to sustain the finding. (*Estate of Jepson,* 178 Cal. 257 [172 Pac. 1007]; *Hitchcock* v. *Rooney,* 171 Cal. 285 [152 Pac. 913]; *McKean* v. *Alliance Land Co.,* 200 Cal. 396 [253 Pac. 134]; *Dam* v. *Bond,* 80 Cal. App. 342 [251 Pac. 818].)

■ The questions for solution on this appeal presented by the second, third, fourth, and fifth specifications of error above set forth involve matters of grave importance to the fruit-growing industries of the state of California. By its answer in this action the defendant Native Son Orchards Company asks that a subsequent crop mortgage be declared prior and paramount in effect to a prior mortgage on the lands, and the rents, issues, and profits thereof, duly executed and recorded before the execution of the crop mortgage on the citrus crops growing and to be grown on the mortgaged land. Whether or not the foreclosure decree should so declare must be determined through a construction of the provisions of section 2955 of the Civil Code, reading as follows: "Mortgages may be made upon all growing crops, including grapes and fruit, and upon any and all kinds of personal property except the following: 1. Personal property not capable of manual delivery; 2. Articles of wearing apparel and personal adornment; 3. The stock in trade of a merchant." This statute was enacted in 1909 as it now stands. (Stats. 1909, page 34.) The clause "mortgages may be made upon all growing crops, including grapes and fruit" was first enacted into section 2955 of the Civil Code in 1893 (Stats. 1893, page 84). Prior to that the section had provided that mortgages may be made upon "growing crops." The purpose and intent of enacting the section in its present form was fully discussed by the supreme court of California in the case of *Simpson* v. *Ferguson,* 112 Cal. 180 [53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484], decided by the court in bank on March 28, 1896.

The facts in that case are very similar to those in the one at bar. Plaintiff sought to foreclose three promissory notes bearing date October 1, 1891, executed to him by the defendant Shaw, secured by a mortgage on orange lands

in Riverside County. Following the particular description of the mortgaged lands was the clause: "Together, with all and singular, the tenements, hereditaments and appurtenances thereunto belonging, and the rents, issues and profits thereof." Defendant Ferguson held a second mortgage on the same property executed by defendant Shaw, and also held a chattel mortgage executed to him by said Shaw on June 17, 1893, upon the crop of oranges then growing, or to be produced during the season of 1893 and 1894, upon the trees upon the mortgaged lands described in plaintiff's mortgage. A judgment of foreclosure was awarded plaintiff directing that the mortgaged lands be sold and the proceeds applied in paying the amount due plaintiff, and directing that if any such surplus remained, defendant Ferguson should be paid the amount found due him. Ferguson moved the trial court to amend its judgment so as to provide that the growing crop of oranges be sold separately and their proceeds applied upon the judgment in his favor. The trial court denied the motion and Ferguson appealed from the judgment. The supreme court reversed the judgment and directed a modification directing a sale of the mortgaged property in accord with Ferguson's request. The decision as first rendered was by the court in department. A petition to have the case heard in bank was granted, and several eminent counsel appeared as *amici curiae,* and the matters involved received a close and careful consideration and discussion, the court in bank finally adopting the conclusion arrived at in department. The court says: "It is urged that sections 2955 and following of the Civil Code, providing for the manner of mortgaging growing crops, do not establish an exclusive method; that, as this class of property may, under some conditions, be regarded as realty, and under other conditions as personalty, it must follow that under corresponding conditions, the property may be the subject of a real estate mortgage or a chattel mortgage, according to the circumstances; and that plaintiff having a valid mortgage upon the land, with its rents, issues and profits, this gives him a valid lien upon the growing crops, as effectually, to the same extent for all purposes, as if executed with the formalities required in the case of a crop mortgage. We are unable to coincide with this view.

"In the first place, we think it quite manifest from the

provisions of the code in question that the legislature intended thereby to provide an exclusive mode for the mortgaging of growing crops, and intended to declare that for such purpose this species of property shall be regarded as chattels. There is nothing in the statute to indicate that it was not intended to cover every case of a mortgage given upon that class of property. In the second place, while it is perfectly true that growing crops may be either personal or real property, according to circumstances, and while, as suggested by respondent, a mortgage of the land gives a lien upon everything that would pass by a grant of the land, which includes crops growing thereon, it is, nevertheless well established that such lien so far as the growing crops are concerned, is limited in its effect to the crops growing upon and unsevered from the land at the time of foreclosure. It does not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof. Until the latter event, where, as in this state, the mortgage creates no estate in the mortgagee, but confers only a lien upon the property, the mortgagor is entitled to such crops, with the same absolute right and dominion over them as if the mortgage did not exist. This doctrine is thoroughly well settled, with no considerable diversity among text writers or the courts.''

Since its rendition this decision has been adhered to and approved in a number of cases of similar nature.

In *Scott* v. *Hotchkiss*, 115 Cal. 89 [47 Pac. 45], an action to foreclose a mortgage, a receiver was appointed under a clause in the mortgage authorizing such appointment. The mortgagor sold the property after executing the mortgage to one Fountain. Prior to this he had leased the property to one Millard. The mortgage was executed in 1891. Millard entered under his lease in 1892. The foreclosure action was begun in February, 1895. The court found that when the receiver was appointed a crop of wheat and hay was growing on the premises, 60 acres of summer-fallow, 20 acres of winter-sown and about 100 acres of volunteer; that Millard put in these crops, except the 20 acres of winter-sown, prior to December 1, 1894; that he furnished the seed, labor, and teams used in putting in the crops; that the customary rental for lands such as the mortgaged premises was one-fourth of the hay and grain grown on the

premises, the other three-fourths being retained by the tenant as compensation for the labor, seed, use of teams and other machinery used in producing the crop and the costs of harvesting, sacking, threshing, baling, and piling the whole crop. The defendant Fountain claimed the entire crop and Millard claimed three-fourths of the crop. The claim of Millard for three-fourths of the crop was sustained. The court says: "The general subject here under consideration was discussed in the late case of *Simpson* v. *Ferguson,* 112 Cal. 180 [53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484]. It was there held that growing crops could be mortgaged only as provided in section 2955 et seq. of the Civil Code. They are therefore not covered by an ordinary real estate mortgage. While growing they are real estate, and are included in the mortgage. But if the mortgagor is in possession, he is entitled to the rents and profits, and to the crops harvested before foreclosure and the transfer of title thereby to a purchaser."

The court cites with approval a similar doctrine announced in *Sexton* v. *Breeze,* 135 N. Y. 387 [32 N. E. 133]; *West* v. *Conant,* 100 Cal. 231 [34 Pac. 705], and *Freeman* v. *Campbell,* 109 Cal. 360 [42 Pac. 35].

Adherence to the conclusions adopted in the *Simpson* v. *Ferguson* case is announced in the subsequent cases of *Bank of Woodland* v. *Heron,* 120 Cal. 614 [52 Pac. 1006], *Modesto Bank* v. *Owens,* 121 Cal. 223 [53 Pac. 552], *Locke* v. *Klunker,* 123 Cal. 231 [55 Pac. 993], *Cowdrey* v. *London etc. Bank,* 139 Cal. 298 [96 Am. St. Rep. 115, 73 Pac. 196], and *Mau, Sadler & Co.* v. *Kearney,* 143 Cal. 506 [77 Pac. 411]. These cases may be said to have established a rule of property concerning mortgages on growing crops in this state which clearly supports the claim of appellant that the trial court erred in finding in its finding No. 9, "which crop mortgage was and is subsequent in effect and time to the real property mortgage of plaintiff," and in its conclusion of law No. 4, "that the crop mortgage of the Native Son Orchards Company is subsequent in time and effect to the real property mortgage of plaintiff," and in not providing in the decree of foreclosure entered in this case that the sale thereunder of the mortgaged lands should be subject to the right of the Native Son Orchards Company, at any time prior to the expiration of redemption, to take

and hold all the crops of citrus fruits growing and maturing on said lands.

The record on appeal in this case shows a situation where the errors complained of can be corrected by an order of the appellate court made in pursuance to the powers given by section 4¾ of article VI of the constitution and section 956a of the Code of Civil Procedure [Stats. 1927, p. 583], without further proceedings in the trial court.

It is ordered that the following portion of finding No. 9 of the trial court, to wit, "which crop mortgage was and is subsequent in effect and time to the real property mortgage of plaintiff" be stricken out, and that there be substituted therefor the following: "which crop mortgage was and is prior in effect to the real property mortgage of plaintiff to the extent of the crops of citrus fruits growing and maturing upon the mortgaged premises up to the time of the expiration of the period of redemption from sale under the order of foreclosure"; that conclusion of law No. 4 of the trial court, "that the crop mortgage of the Native Son Orchards Company is subsequent in time and effect to the real property mortgage of plaintiff" be stricken out and that there be substituted therefor the following: "That the crop mortgage of the Native Son Orchards Company was and is prior in effect to the real property mortgage of plaintiff to the extent of the citrus crops growing and maturing upon the mortgaged premises up to the time of the expiration of the period of redemption from sale under the order of foreclosure"; and that the judgment appealed from be and the same is hereby modified by adding thereto the following: That the crop mortgage of the Native Son Orchards Company is a lien prior in effect to the lien of plaintiff's mortgage upon any and all crops of citrus fruits growing and maturing on the mortgaged premises up to the time of the expiration of the period of redemption from sale under order of foreclosure, and as so modified, the judgment will stand affirmed, appellant to recover its costs of appeal.

Plummer, J., and Hart, Acting P. J., concurred.