CASSIDY COMMISSION COMPANY,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9511.

United States Court of Appeals
Tenth Circuit.

Nov. 8, 1967.

Clarence P. Green, Oklahoma City, Okl., for appellant.

Givens L. Adams, Asst. U. S. Atty., (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

The United States brought this action against Cassidy Commission Company to recover the value of five cows which Cassidy received for sale from and sold for Edward F. Ferguson. From a judgment for the United States, Cassidy has appealed.

The basic facts are not in dispute. Only the inferences drawn therefrom by the trial court are challenged by Cassidy.

Cassidy is a livestock commission house engaged in the business of selling at auction livestock delivered to it for sale on a commission and yardage charge basis.

On October 9, 1962, Ferguson and Irma Lee Ferguson, his wife, executed and delivered to the United States a crop and chattel mortgage to secure loans aggregating $11,550 made to them by the United States through the Administrator of the Farmers Home Administration.

The chattel mortgage covered 49 head of cattle. In such mortgage, following a designating number covering one or more of the mortgaged cattle, were set forth the kind, breed, sex, color, brand, name or other description, and the weight of each of such cattle. Numbers 4, 12 and 15 each covered one cow, described as a black and white Holstein; Number 6 covered one cow, described as a black Holstein; and Number 27 covered five cows, each described as a black and white Holstein.

The age and weight of the Number 4 cow, as set forth in the mortgage, was four years and 1,400 pounds, of the Number 6 cow, five years and 1,450 pounds, of the Number 12 cow, six years and 1,200 pounds, of the Number 15 cow, three years and 900 pounds, and of each of the Number 27 cows as coming two years old and 800 pounds.

On March 14, 1963, the cattle described in the chattel mortgage were checked by a representative of the F.H.A. All were present and accounted for, except two heifers. Ferguson advised the inspector that the two heifers "had gotten out" the night before the inspection and he "had not found them." In August,

1963, a representative of the F.H.A. again checked the cattle covered by the chattel mortgage and found all present and accounted for, except seven cows. They were the four cows designated by Numbers 4, 6, 12 and 15, and three of the cows designated by Number 27 in the chattel mortgage.

James H. Slatten, County Supervisor for the F.H.A. for McClain County, Oklahoma, the county in which the mortgage property was located, made inquiry of Cassidy and was told by it that five cows had been delivered to it for sale by Ferguson and had been sold by it.

Records of Cassidy introduced in evidence show that it received from and sold for Ferguson one cow on March 25, 1963, weighing 1,475 pounds; one cow on April 10, 1963, weighing 1,025 pounds; one cow on May 7, 1963, weighing 1,260 pounds; one cow on June 11, 1963, weighing 1,340 pounds, and one cow on July 16, 1963, weighing 1,060 pounds.

The net proceeds of the sale of such cows aggregated $862.30, which was paid to Ferguson by Cassidy.

The applicable Federal Regulation governing the powers and duties of F.H.A. County Supervisors (6 CFR, Chapter III, § 371.5) in part reads:

"§ 371.5  *Releasing security property.*

\*    \*    \*    \*    \*    \*

"(a) \* \* \* County Supervisors are authorized hereby to release basic security when the property has been sold or exchanged for its fair market value, and the proceeds are used for one or more of the following purposes:

"(1)  To pay on the debts owed to the Farmers Home Administration which are secured by liens on the property sold.

"(2)  To purchase from the proceeds of the sale, or to acquire through exchange, property more suitable to the borrower's needs, subject to the following conditions: The new property, together with any proceeds applied to the indebtedness, will have security value to the Farmers Home Administration at least equal to that of the lien formerly held by the Farmers Home Administration on the old property.  The new property must be made subject to a lien in favor of the Farmers Home Administration by \* \* \* 'after acquired property' clauses in lien instruments."

Before the County Supervisor knew that the sales of the five mortgaged cows here involved had been made, Ferguson had received the proceeds of the sales of such mortgaged cows from Cassidy and had purchased property therewith, which Slatten, as County Supervisor, was not authorized under the Regulation to accept as security in place of such five cows and to release the mortgage as to them, and he had not undertaken so to do.  He had not consented to the sales of such five cows before the sales were made, nor had he approved such sales after they were made.  Slatten, as County Supervisor, had never undertaken to give his consent to a sale of mortgaged property by Ferguson or any other mortgagor.  He had only exercised his authority to release mortgaged property from the mortgage when the mortgagor had complied with the requirements of the Regulations with respect to such a release.

Prior to the sale of the five cows here involved, Ferguson had made sales of eight cows covered by the mortgage. However, Slatten, as County Supervisor, had not given his consent to Ferguson to make any of such sales.  After the making of each of the sales of such eight cows, Ferguson advised Slatten, as County Supervisor, of the sale, and it was only after the proceeds thereof had been used as a payment on the mortgage debt or after they had been used to acquire new property and such new property had been brought under the mortgage by the after acquired property provision thereof that Slatten, as such Supervisor, released any of the eight cows sold from the mortgage.

Subsequent to the sales of the cows here involved and the second security check, the balance of the mortgaged property was sold at a liquidation sale held on August 31, 1963, for a net of $6,977.50, leaving a substantial deficiency which exceeded what Ferguson had received from the sale of the five cows.

The chattel mortgage was properly executed and duly witnessed and was entitled to be filed for registration in the office of the County Clerk of McClain County, Oklahoma. It was so filed on October 9, 1962.

The court found the facts substantially as above stated; and it specifically found that the cows covered by the chattel mortgage were accounted for in March, 1963; that one of the sales by Ferguson took place on March 25, 1963; a second on April 10, 1963; a third on May 7, 1963; a fourth on June 11, 1963; and a fifth on July 16, 1963; that an inspection of the property covered by the chattel mortgage in August, 1963, disclosed that five of the mortgaged cows were not present and accounted for; that the weights of the five cows sold by Cassidy reasonably corresponded under the circumstances with the weights of the missing cows; that Ferguson had personal possession of the five cows he delivered to Cassidy for sale; and that he requested Cassidy to sell the five cows for him and that Cassidy did so.

From such subsidiary findings made by the trial court, it found that the five cows sold by Cassidy for Ferguson were covered by the mortgage; that neither the F.H.A. nor the County Supervisor had consented to such sales; and that neither the F.H.A. nor the County Supervisor had waived the lien of the mortgage on such five cows; and that the County Supervisor had not consented nor undertaken to consent to the sale of the eight cows, and had only released the eight cows from the lien of the mortgage after Ferguson had complied with the requirements of the Regulation respecting such releases.

The loans here involved were made through the F.H.A. pursuant to the provisions of the Bankhead-Jones Farm Tenant Act, as amended by the Consolidated Farmers Home Administration Act of 1961, 7 U.S.C.A. § 1921 et seq.

The general and specific findings of fact made by the trial court were supported by substantial evidence and were not clearly erroneous; and the inferences drawn by the trial court from the facts found were inferences that reasonable men might draw therefrom and were not clearly erroneous. Hence, we are bound by the findings made and inferences drawn by the trial court.[1]

The making of the loans and the taking of the security therefor were the exercise by the federal government of a grant of constitutional power.[2]

The power of the United States to protect its purse from potential injury is clear.[3]

In the absence of an applicable act of Congress, it is the duty of the federal courts to fashion a federal rule governing the rights of the United States under such security instruments as the chattel mortgage here involved.[4]

1. Glens Falls Insurance Co. v. Newton Lumber & Mfg. Co., et al. and DMH v. Newton Lumber & Mfg. Co., et al., 10 Cir., (filed October 24, 1967) 388 F. 2d 66, and cases cited in note 10 thereto; Swan v. C. I. R., 6 Cir., 355 F.2d 795, 799; Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Cole v. Neaf, 8 Cir., 334 F.2d 326, 329.

2. United States v. Sommerville, 3 Cir., 324 F.2d 712, 716; Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838.

3. United States v. Sommerville, supra.

4. Clearfield Trust Co. v. United States, supra; United States v. Carson, 6 Cir., 372 F.2d 429, 432; United States v. Matthews, 9 Cir., 244 F.2d 626, 628.

■ A uniform federal rule is essential to protect the security interests of the United States [5] and to prevent such interests from being detrimentally affected through the uncertainty that would arise from the application of disparate state rules.[6]

The principles above enunciated were applied to loans made under the Bankhead-Jones Farm Tenant Act in United States v. Carson, 6 Cir., 372 F.2d 429.

■ The chattel mortgage here involved was duly recorded in the records of McClain County, Oklahoma, where the property was situated. Recording may have been incidental to the perfecting of the lien of the United States. In such a case, a federal court will recognize that requirement of state law, but it will look no further to the state law in determining the liability of a commission merchant or auctioneer for selling the mortgaged property and paying the proceeds of the sale over to the mortgagor without the consent of the mortgagee.[7]

Taking into consideration the probable growth of the cows, especially the coming two year old, the weights of such cows when the mortgage was executed on October 9, 1962, and their weights at the time of the sales were sufficiently approximate for the mortgaged cattle and the cattle sold to be identical.[8]

■ We are of the opinion that the facts and inferences reasonably deductible therefrom warranted the finding of the trial court that the cattle sold were the five missing cows covered by the mortgage.

■ Counsel for Cassidy further assert that Slatten, the County Supervisor, by his actions with respect to the eight cows sold by Ferguson prior to the sales here involved, impliedly consented to the sale of the five cows by Cassidy for Ferguson and waived the lien of the mortgage on each of such cows. We agree with the holding of the trial court that there was no such consent to the sales nor waiver of the lien on the five cows sold by Cassidy for Ferguson.

It will be observed that the Regulation does not authorize the County Supervisor to give his consent to a sale to be made by the mortgagor of mortgaged property; and that it only authorizes a County Supervisor to release mortgaged property from the mortgage when it has been sold or exchanged for its fair market value and after, but not before, the proceeds of the sale have been applied on the mortgage debt, or new property purchased or received in exchange, which equals or exceeds in value the property sold or given in exchange, has been brought under the lien of the mortgage by the after acquired property provision therein.

It is one thing for the mortgagee to give his consent to the sale of all or part of the mortgaged property, with an agreement on the part of the mort-

5. United States v. Carson, supra.

6. United States v. Sommerville, supra, 324 F.2d at page 714.

7. United States v. Sommerville, supra, 324 F.2d at page 717.

8. The weights and ages of the five missing cows on the date the mortgage was executed, October 9, 1962, were as follows:

| 1 Cow | 1,400 lbs. | | 4 yr. |
|---|---|---|---|
| 1 Cow | 1,450 lbs. | | 5 yr. |
| 1 Cow | 1,200 lbs. | | 6 yr. |
| 1 Cow | 900 lbs. | | 3 yr. |
| 1 Cow | 800 lbs. | coming | 2 yr. |

The dates of sale and the weights of the five cows sold by Cassidy for Ferguson were as follows:

| March 25, 1963 | 1 Cow | 1,475 lbs. |
|---|---|---|
| April 10, 1963 | 1 Cow | 1,025 lbs. |
| May 7, 1963 | 1 Cow | 1,260 lbs. |
| June 11, 1963 | 1 Cow | 1,340 lbs. |
| July 16, 1963 | 1 Cow | 1,060 lbs. |

gagor that he will thereafter meet certain requirements, which might constitute a waiver of the lien.

It is quite another thing for the mortgagee to authorize his agent to release from the mortgage property that has been sold or exchanged for its fair market value when, and only when, the proceeds of a sale have been applied on a mortgage debt, or the new property acquired with the proceeds of the sale or through the exchange has been brought under the lien of the mortgage by the after acquired property clause therein.

The first contemplates a consent given with conditions thereafter to be complied with; while the latter contemplates a release to be given after the prescribed conditions have been complied with. Here, all that Slatten, as County Supervisor, did was to release the mortgage lien on the eight cows as and when, and only when, Ferguson had complied with the requirements of the Regulation with respect to the release of security. More than that he clearly was not authorized to do and more than that he did not undertake to do.

 It is our conclusion that where personal property is covered by a mortgage given to secure a loan made by the F.H.A., one who purchases such property from the mortgagor takes the risk that the mortgagor will meet the requirements laid down by the Regulation to obtain the release of the property from the mortgage.

In United States v. Essley, 10 Cir., 284 F.2d 518, at page 521 the court said:

"* * * it is a well established rule that, without a clear manifestation of Congressional intent, the United States is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights. * * *"

The action was not barred by limitation or laches.[9]

The judgment is accordingly affirmed.

---

9. The instant action was commenced on March 31, 1966. On July 18, 1966, Congress enacted a federal statute of limitations which provides that except as otherwise provided by Congress every action for money damages brought by the United States which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues, but further provides that an action for converting the property of the United States may be brought within six years after the right of action accrues, and further provides that any right of action subject to the limitation provision which accrued prior to the enactment thereof shall be deemed to have accrued on the date of the enactment of the Act. See 28 U.S.C.A. § 2415.