**DEPARTMENT OF REVENUE OF the STATE OF NEW MEXICO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 50–68.**

United States Court of Appeals Tenth Circuit.

March 13, 1969.

Gary O'Dowd, Asst. Atty. Gen., Santa Fe, N. M. (Boston E. Witt, Atty. Gen., and Edward R. Pearson, Asst. Atty. Gen., Santa Fe, N. M., with him on the brief), for appellant.

Bennet N. Hollander, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, J. Edward Shillingburg, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The United States instituted this action against the Department of Revenue of the State of New Mexico to obtain a refund of taxes collected under the Emergency School Tax Act[1] and the Compensating Tax Act.[2]

It has been stipulated that Land-Air, Inc., an Illinois corporation, paid defendant appellant (a) New Mexico Emergency School Taxes, under Section 72–16–4.10, New Mexico Stat.Ann. (1953), on its gross receipts from contracts with the United States, and (b) New Mexico Compensating Taxes, under Section 72–17–3, New Mexico Stat.Ann. (1953), by reason of its use in New Mexico of personal property in performance of its contracts with plaintiff appellee United States, in the amounts of $117,976.29 and $24,401.72 respectively.

All said taxes were paid, without written protest, to avoid the assessment by appellant of penalties and interest. Appellant, prior to July, 1957, and at all times through March 6, 1959, took the position that, (a) effective June 7, 1957, gross receipts from contracts for the sale of services to the United States were subject to tax under the New Mexico Emergency School Tax Act, § 72–16–4.10 and (b) government cost-plus contractors were subject to tax under the New Mexico Compensating Tax Act, § 72–17–3, by reason of their use in New Mexico of personal property procured by them for the United States from vendors outside of New Mexico, even though ownership of the property used passed directly from the vendors to the United States.

All the gross receipts of Land-Air with respect to which Emergency School Taxes were paid were receipts from the sale of services by Land-Air to the United States.

All of the personal property with respect to the use of which said Compensating Taxes were paid to appellant by Land-Air were procured by Land-Air for the United States from vendors outside of New Mexico under contracts by which ownership of the property passed directly from the vendors to the United States.

As required by the provisions of said contracts between them, the United States reimbursed Land-Air for each of said tax payments within sixty days after the respective payment was made by Land-Air.

"This action is brought to recover all said taxes paid by Land-Air. Under the terms of said contracts between

1. N.M.Stat.Ann. Chap. 72, Art. 16 (1953).

2. N.M.Stat.Ann. Chap. 72, Art. 17 (1953).

Land-Air and the United States, any recovery of any such taxes will belong and inure to the United States. [This does not include taxes recovered in state action referred to hereafter in the stipulation excluding that recovery]. * * *

"In or about February, 1960, Land-Air instituted an action against defendant and the then Commissioner of Revenue and Director of the School Tax Division, in the District Court of the State of New Mexico for the County of Santa Fe (which was assigned file number 30,900) for the recovery of Emergency School Taxes and Compensating Taxes which Land-Air had paid under written protest, including payments of (1) additional Emergency School Taxes for the period June 1, 1957 through June 30, 1959, assessed by defendant's School Tax Division with respect to Land-Air's gross receipts from contracts with the United States and (2) additional Compensating Taxes for the period June 1, 1957 through July 31, 1959, assessed by defendant's Compensating Tax Division with respect to Land-Air's use of personal property in New Mexico in performance of contracts with the United States.

"In said action 30,900, no claim was made by Land-Air for the recovery of any of the taxes sought to be recovered in this action. Nor has Land-Air or the United States brought any other proceeding, administrative or judicial, to recover any part of the taxes sought to be recovered in this action.

"In said action 30,900, a final judgment was rendered and entered, after an adversary trial, granting Land-Air refund of the amounts paid on said additional assessments on the ground that they were illegal and void because (a) the provisions of the Emergency School Tax Act in effect during the period for which said additional Emergency School Taxes were assessed unconstitutionally discriminated against the United States and its contractors and (b) the provisions of the Compensating Tax Act in effect during the period for which said additional Compensating Taxes were as-

sessed, did not subject Land-Air to any Compensating Tax for its use of personal property not owned by it. Defendant satisfied said judgment by payment to Land-Air.

"Until June 7, 1957, proceeds of sales of tangible personal property and services to the United States were exempt from New Mexico Emergency School Taxes by an express provision of the New Mexico Emergency School Tax Act.

"Effective June 7, 1957, the Emergency School Tax Act was amended so as to remove said exemption from tax previously provided for proceeds of sales to the United States, and during the period for which the Emergency School Taxes sought to be recovered in this action were paid (June 7, 1957, through February 28, 1959), the Emergency School Tax Act, as amended by Chapter 187, Section 1 of the Laws of New Mexico, 1957 (New Mexico Statutes Annotated, 1953 Compilation, § 72–16–5) provided:

"72–16–5. None of the taxes levied by this act shall be construed to apply to sales made to the state of New Mexico or any of its political subdivisions; nor to sales made to societies, hospitals, fraternal or religious organizations not organized for profit.

"During the period for which the Compensating Taxes sought to be recovered in this action were paid (June 1, 1957 through February 28, 1959), the Compensating Tax Act, as amended, provided:

"72–17–2. *Definitions.*—The following words, terms and phrases, when used in this act [72–17–1 to 72–17–30], have the following meaning, except where the context clearly indicates a different meaning: * * * (b) 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business. * * * [As enacted by Chapter 95, Section 2 of the Laws of New

Mexico, 1939 (New Mexico Statutes Annotated, 1953 Compilation, Section 72–17–2).]

"72–17–3. *Tax on tangible personal property stored, used or consumed in state.*—An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from a retailer on or after July 1, 1939, and stored, used or consumed in this state at the rate of two per cent [2%] of the sales price of such property; * * [As amended by Chapter 227, Section 4 of the Laws of New Mexico, 1957 (New Mexico Statutes Annotated, 1953 Compilation, Section 72–17–3).]"[3]

The trial court found the facts as stipulated above and concluded the taxes were illegally collected because they were "discriminatorily imposed" and were not authorized against the United States.

It further concluded the United States was the real party in interest and that the state statutes of limitations did not bar the United States from recovery.

It finally concluded that the action by Land-Air upon which it obtained judgment against New Mexico Department of Revenue was not res adjudicata or otherwise a bar to the action.

Judgment was given to the United States with interest. This appeal followed which raises four issues: Whether the United States acquired a right to sue for refund when it reimbursed Land-Air pursuant to contract even though Land-Air did not pay the taxes under protest; whether the state limitation applicable against Land-Air is equally applicable against the government; whether the United States is entitled to recover interest on its refund of taxes; and whether the prior action of Land-Air in the state court bars recovery of the United States because it is res adjudicata.

■ In relation to the question of whether reimbursement gives the United States a right to sue for refund this court has adopted one of the many criteria courts have evolved in establishing a formula of implied sovereign immunity in tax cases of this type:

"[U]pon reimbursement to the taxpayer for the exacted tax pursuant to its contract to do so, the United States became the real party in interest to assert its right to be relieved from the unconstitutionally discriminatory tax and to assert its immunity from taxation by the state."[4]

The court above was discussing its opinion in the appeal in United States v. Bureau of Revenue, State of New Mexico, D.C., 217 F.Supp. 849, relied upon by appellant. This court said: "We adhere to the views expressed on appeal to this court and hold that upon payment of the tax pursuant to its contractual obligation, the government became the real party in interest with the right to assert the invalidity of the tax on the grounds of unconstitutional discrimination against the government and those with whom it deals." [5]

■ This court answered the limitations issue in the same case declaring the constitutionally vested right to be reimbursed as a sovereign immunity from state taxation of the type here collected cannot be impeded or obstructed "by state notions of available remedies or statute of limitations." [6]

■ It is contended that the state action described in the stipulation constitutes a bar to the current litigation because of the doctrine of "res adjudicata."

"The general principles of res adjudicata and collateral estoppel by judgment are well recognized. Where a second action between the same parties or their privies is on the same cause of action as the first, the final judg-

---

3. Verbatim stipulation of facts contained in the record.

4. Marquardt Corp. v. Weber County, Utah, 360 F.2d 168, 171 (10th Cir. 1966).

5. Id. at 171.

6. Id. at 171.

ment in the former action is conclusive as to all matters actually litigated and as to any other issue, claim or defense which might have been presented in that action. But a judgment in a prior action between the same parties or their privies which was not based upon the same claim or cause of action as is the second one, will operate as an estoppel only as to those common issues, claims or defenses which were actually litigated and determined in the first action." [7]

We examine the claims presented in the state court action and this action in the light of the above teaching.

It has been stipulated that the state court issues decided were "additional assessments on the ground that they were illegal and void because (a) the provisions of the Emergency School Tax Act in effect during the period for which said additional Emergency School Taxes were assessed unconstitutionally discriminated against the United States and its contractors and (b) the provisions of the Compensating Tax Act in effect during the period for which said additional Compensating Taxes were assessed, did not subject Land-Air to any Compensating Tax for its use of personal property not owned by it. Defendant satisfied said judgment by payment to Land-Air."

The trial court in the present action determined this case on the issues.

"(a) the taxes herein sought to be recovered were illegally collected from Land-Air, Inc, in that (i) the Emergency School Taxes imposed under Chapter 72, Article 16, N.M.S.A., 1953 Compilation, were discriminatorily imposed in violation of the Federal Constitution and (ii) the Compensatory Taxes imposed under Chapter 72, Article 17, N.M.S.A., 1953 Compilation, were not authorized because the United States, rather than Land-Air, Inc., owned the property with respect to which the taxes were paid; and

"(b) the United States is the real party in interest and may sue to recover the taxes illegally collected from Land-Air, Inc.; and

"(c) this court has jurisdiction to entertain this action under 28 U.S.C. Section 1345; and

"(d) defendant has no defense to this action in that (i) the four month statutes of limitation provided by Sections 72–16–28 and 72–17–16, N.M. S.A., 1953 Compilation, are not applicable to actions brought by the United States and (ii) the six year statute of limitations provided by 28 U.S.C. Section 2415(a) has not yet run; and

"(e) the United States has not been guilty of laches and, in any event, is not subject to the defense of laches; and

"(f) the judgment in Action No. 30,-900 in the New Mexico District Court for Santa Fe County is not *res judicata* as to the United States and is not otherwise any bar to this action; and

"(g) Land-Air, Inc. is not an indispensable party to this action; * * "

It is evident that the Federal District Court accepted the state court's determination of (a) above and thereafter determined issues not presented in the state court.

It is evident from the transcript that the United States' prospective claim in the state court was not ripe for relief because it had not reimbursed Land-Air for the taxes paid and therefore could not have been a party to the action in state court because it could not prove it had paid the taxes sought in the action. Whereas, in the present claim, it had reimbursed Land-Air under the provisions of the contract and thereby paid the tax which it seeks to recover.

■ The State further contends the interest assessed against it should be denied. The basis for this contention is that interest is recovered in response to a consideration of fairness and its exaction will be denied if it is inequi-

7. Security Ins. Co. v. Johnson, 276 F.2d 182, 187 (10th Cir. 1960).

table.[8]   As evidence of the unfairness and inequity it argues the inordinate delay in instituting the claim.

The transcript reveals that in this case the claims of the government began to ripen between July 10, 1957 and March 6, 1959.   The latter date being the date upon which the aggregate amount herein claimed would have been ripe for remedy. This action was not filed until April 6, 1967, at least eight years after accrual of remedy.

The erosion of their fiscal condition experienced by many states during this period of expanding educational programs within the states, gives rise to an ever-increasing tax obligation upon state taxpayers.   To allow interest to accumulate on money long since spent by the state in its educational program after an inordinate delay in presenting the claim is both unfair and unreasonable.   We therefore deny the interest awarded in the judgment herein and affirm all other relief granted.

Affirmed in part, reversed in part.

---

8.   Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939).