**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**CAHILL GRAIN COMPANY,**
**Defendant-Appellant.**

**No. 72-1834.**

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1973.

Decided July 2, 1973.

John A. Berry, Streator, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before FAIRCHILD and SPRECHER, Circuit Judges and CAMPBELL, Senior District Judge.*

SPRECHER, Circuit Judge.

This appeal questions whether the purchaser of personal property covered by a security agreement to secure loans made by the Farmers Home Administration takes the risk that the mortgagor has complied with the requirements established by regulation to obtain the release of the property from the agreement.

The United States filed its complaint on December 28, 1971 in the federal district court in Peoria, Illinois, alleging that Jerome J. Phelan had obtained operating loans from the Farmers Home Administration during the years 1964 through 1970, which loans were evidenced by several promissory notes upon which a principal balance remained unpaid in excess of $12,000 plus accrued and accruing interest; that Phelan had executed and delivered to the United States a security agreement and a financing statement, the latter having been filed with the office of the Recorder of LaSalle County, Illinois, on March 19, 1970; that on or about January 18, 1971, the defendant Cahill Grain Company ("Cahill") had purchased corn and beans from Phelan for $9,856, remitting $3,447 thereof to the United States; and the United States prayed for judgment against Cahill for the balance of $6,409 plus interest and costs.

The deposition was taken by Cahill of Gerald Gook, the County Supervisor in LaSalle County for Farmers Home Administration, who testified that about October 2, 1970 he personally stopped by the Cahill elevator and asked Ed Cahill whether he had received a letter from FHA naming all the borrowers from FHA. When Cahill said that he had received it, Gook advised him that for his protection he should make out any checks due to sellers of crops who were borrowers, jointly to the particular seller and to FHA.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by by designation.

The defendant Cahill, in opposing the United States' motion for summary judgment, filed two affidavits. One was by the Cahill manager, Edward T. Cahill, who testified that in the early part of October, 1970, Phelan requested an advance on the sale of his crops of $3,000 to purchase a combine; that at Phelan's request Cahill telephoned Ray Vogel at the International Harvester store, who told Cahill that Gook had consented to the making of the $3,000 advance, whereupon Cahill issued a check dated October 14, 1970 payable jointly to International Harvester Company and Phelan; that on or about December 31, 1970, Phelan stated to Cahill that he needed about $3,409 as an advance on the sale of his crops in order to pay various debts and that Gook had consented to the advance.

The second affidavit was by Ray Vogel who testified that he had been employed by International Harvester at Streator, Illinois, and that at Phelan's request, Vogel had telephoned Gook in the early part of October, 1970 and that Gook had consented to Cahill advancing $3,000 on Phelan's crops to International Harvester as a down payment on a combine.

In his deposition, Gook denied giving any consent for the $6,409 advances made by Cahill on Phelan's behalf to Phelan's other creditors. In an affidavit Gook also denied knowing about, and hence consenting or authorizing, Phelan's transactions with Cahill until after Phelan's crops were sold on January 18, 1971.

The district court entered summary judgment in favor of the United States against Cahill for $6,409 plus interest, saying:

". . . [I]t appears that the only disputed issues of fact relate to whether the F.H.A., through Mr. Gook, expressed to third parties a willingness to consent to these advances. The Court believes any such issues to be immaterial, because it is clear that no representative of defendant ever made an attempt to secure such consent from Mr. Gook, or from any other representative of the Government."

The advances made by Cahill on behalf of Phelan took place on October 14 and December 31, 1970. The Code of Federal Regulations in effect during 1970 included the following provisions regarding Farmers Home Administration loans (7 CFR § 1871.3):

"County supervisors may furnish buyers within a trade area with lists of borrowers whose chattels or crops are subject to liens held by the Farmers Home Administration. . . . When the County Supervisor considers it advisable, he should personally deliver the letter and list to the buyers and explain the purpose thereof."

This is what Gook testified he did on or about October 2, 1970 and in addition that he expressly told Cahill that if any borrower on the list sold his crops to Cahill, Cahill should make the check payable jointly to the United States and the borrower.

Cahill asserted that a few days thereafter (some time between October 2 and 14, 1970), based on a telephone conversation with a salesman interested in selling a combine, he accepted the salesman's assurance that Gook had consented to the making of a check for $3,000 out to International Harvester instead of to the United States despite Gook's personally-delivered message to the contrary still ringing in his ears. Cahill did not contend that he tried to talk directly to Gook to confirm this purported change in Gook's position. Nor did Cahill try to find out Gook's attitude later in December, 1970, when he accepted the borrower Phelan's statement that Gook had consented to additional pay-outs on Phelan's behalf.

County supervisors have the authority to release all or part of chattel security under the Farmers Home Administration regulations but it is a closely-supervised and controlled authority. If a borrower seeks a release, he must submit written plans and budgets on forms provided by FHA (7 CFR § 1871.4 (1970)). Written releases will be furnished by the county supervisor upon the request of a borrow-

er or "an interested third party" (§ 1871.6(b)).

The regulations provide (§ 1871.6(a)):

> "Purchasers of mortgaged property who make inquiry will be informed that they should deliver any proceeds in cash to the County Supervisor or make checks payable jointly to the borrower and the Farmers Home Administration."

The Supreme Court noted in Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384–385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) that

> "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307."

The Court held at page 384, 68 S.Ct. at page 3:

> "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."

In Cassidy Commission Co. v. United States, 387 F.2d 875, 880 (10th Cir. 1967), the Tenth Circuit, in a case where the United States sued, as here, to recover the value of five cows upon which it held a chattel mortgage, from the livestock commission house which had sold the cattle and turned the proceeds over to the farmer, said:

> "It is our conclusion that where personal property is covered by a mortgage given to secure a loan made by the F.H.A., one who purchases such property from the mortgagor takes the risk that the mortgagor will meet the requirements laid down by the Regulation to obtain the release of the property from the mortgage."

Here the county supervisor advised Cahill that if any FHA borrower sold his crops, FHA must be a joint party on the check; a few days later the precise question arose and Cahill did not seek FHA guidance; had it done so, it would have again been advised that FHA must be a joint party on the check; nevertheless Cahill was bound by the regulations setting forth the formalities for obtaining a release, which were not observed here, and the continuing requirement of joint payment of proceeds, which procedure Cahill did not follow; Cahill took the risk inherent in its failure to inquire or to ascertain the proper procedure; and whether or not Gook orally consented to Vogel, which was beyond Gook's authority, is immaterial.

The judgment of July 5, 1972, is affirmed.