**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roxana GIRAGOSSIANTZ et al.,
Defendants-Appellants.**

**No. 71-2409.**

United States Court of Appeals,
Ninth Circuit.

Nov. 30, 1973.

**359**

Stephen A. Kalemkarian, Fresno, Cal., for defendants-appellants.

Dwayne Keyes, U. S. Atty., Richard V. Boulger, Asst. U. S. Atty., Russell J. Mays, Acting Reg. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WRIGHT and CHOY, Circuit Judges, and SMITH,* District Judge.

OPINION

RUSSELL E. SMITH, District Judge:

This action, brought by the United States, involves conflicting claims to the proceeds of raising crops.

The rights of the defendants arise out of a trust deed and an "assignment of rents, issues and profits" describing the debtor Delgado's property in Kings County, California. The trust deed and assignment were executed and duly recorded in Kings County in the year 1963.

The rights of the United States arise out of a security agreement given the Farmers Home Administration (hereafter FHA) which described crops to be grown on the debtor Delgado's property. The security agreement was executed and the financing statement duly filed in April 1966.

The debts secured by the instruments described have not been paid. Giragossiantz gave notice of default and election to sell under deed of trust on September 20, 1967, and thereafter secured the ap-

*The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

pointment of a receiver. Delgado abandoned the property before the receiver was appointed by a state court. The receiver boxed, sorted, reconditioned, and delivered the 1967 raisin crop to a packing company at a cost of $105.02 and received for the crop the sum of $3,663.51.

The district court found the priorities in favor of the United States as to the proceeds of the 1966 and 1967 crops,[1] denied the receiver's claims for expenses incurred by the receiver except for the $105.02, and entered a money judgment against defendants in the amount of $3,558.49.

■■■ Federal law governs the security rights of the United States in connection with FHA loans (United States v. Matthews, 244 F.2d 626 (9th Cir. 1957)), but there is no federal statute applicable, nor is there a controlling FHA regulation. Defendants claim that 6 C.F.R. § 331.10 (1966), which recites in part,

§ 331.10 Security policies.

(a) . . . each loan will be secured as follows:

(1) *Crops, title to which is held by the borrower.* By a first lien on the applicant's crops, or his share of the crops if he is a share tenant, which are growing or to be grown by him, subject only to:

(i) The landlord's lien on the crops for reasonable cash or privilege rent for the current year.

(ii) The real estate mortgagee's lien on real estate purchase contract holder's lien on the crops for the current year's installment on the real estate debt, provided such installment is reasonable when related to the normal rental charges for similar farms in the area . . .,

governs and that under it they are entitled to a priority. The claim fails because 6 C.F.R. § 331.10, the whole of which is entitled "Security policies,"

does not fix priorities upon the liquidation of collateral but is rather a set of instructions telling FHA lending officers what kind of security is to be taken at the time a loan is made.

■■■ There being nothing in the statutes or regulations governing priorities, the court must fashion the federal rules which are applicable. It is not necessary in this case in the fashioning of the federal rules to choose between the state law (*see* Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941)) and the federal law merchant (Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)) because in either case the FHA crop mortgage would prevail over the defendant's rights under the trust deed assignment.

The language of the trust agreement and assignment,

Trustor also assigns to Beneficiary all rents, issues and profits of said realty reserving the right to collect and use the same except during continuance of default hereunder and during continuance of such default authorizing beneficiary to collect and enforce the same by any lawful means in the name of any party hereto . . .,

did not create and was not intended to create a present security interest in the crops. The parties intended that the debtor have a right to dispose of the crops until the happening of some future event, i. e., a default and the taking of possession under the trust deed by the trustee or beneficiary. The right to dispose of crops includes the right to mortgage them. The courts of California and the courts stating the federal law merchant have recognized that the rights of a crop mortgagee are superior to the rights of the owner of a trust deed and an assignment of rents taken in connection with it where the chattel mortgage is taken before trustee under

1. The 1966 crops are apparently involved because of delayed payments by a raisin administrative committee which administered the 1966 and 1967 raisin pools, and the United States holds those proceeds which defendants claim.

the trust deed takes possession. As to the federal law merchant *see* Freedman's Saving and Trust Co. v. Shepherd, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888).[2] As to California law prior to the enactment of the Commercial Code, effective January 1, 1965, *see* Simpson v. Ferguson, 112 Cal. 180, 40 P. 104 (1895), aff'd en banc, 44 P. 484 (1896); First National Bank of Lindsay v. Garner, 91 Cal.App. 176, 266 P. 849 (1928); Bank of America National Trust & Savings Association v. Bank of Amador County, 135 Cal.App. 714, 28 P.2d 86 (1934); Casey v. Doherty, 116 Cal.App. 42, 2 P.2d 495 (1931). Such rights as defendants had under California law depended upon the law governing in 1963 when the trust deed was taken. If the Commercial Code were otherwise available to enlarge defendants' rights, which we do not decide, it is of no aid to the defendants here because the trust deed and assignment of rents does not qualify as a financing statement under Cal. Commercial Code § 9402 (West 1964).

■■ Defendants urge that costs of the receivership should have been paid from the funds in the hands of the receiver. The direct costs of boxing, sorting, reconditioning, and delivery of the raisins were allowed. The court properly refused to allow the receiver credits for taxes paid to redeem the real property from tax sales. The taxes were paid for the benefit of the beneficiary of the trust deed. The receiver did preserve the raisin crop, and but for his services the crop might have been lost. Under these circumstances that part of the general costs of the receivership attributable to the preservation of the raisin crop might have been charged to the fund generated by the receiver under the court's equitable powers. Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002 (1927); Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909). The district court did not exercise its discretion in this regard but ruled as a matter of law

that the lien of the FHA mortgage was superior to any lien which the receiver might have. The record does not disclose any facts from which we can determine what part of the general receivership costs ($779.20) equitably might be charged to the raisin fund. Likewise we cannot determine whether the proceeds of the sale of the real property were sufficient to pay the indebtedness and all of the receiver's charges. The cause is therefore remanded to the district court to determine whether in the exercise of the court's discretion some portion of the receiver's general costs should be borne by funds in the hands of the receiver.

---

2. This case did not involve a crop mortgage but does establish an applicable rule.