UNITED STATES of America, Plaintiff,

v.

BUNKER LIVESTOCK COMMISSION,
INC., a corporation, Defendant.

No. 76–530 Civil.

United States District Court,
D. New Mexico.

June 21, 1977.

Charles L. Sandoval, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff.

John J. Duhigg, Duhigg & Cronin, Albuquerque, N. M., for defendant.

MEMORANDUM OPINION

PAYNE, Chief Judge.

This matter having come on for consideration upon the stipulation of facts submitted by the parties. The Court has considered the memoranda filed together with the exhibits and the entire file in this cause and concludes that the plaintiff should prevail and judgment entered in its favor.

On April 16, 1971, an operating loan was made by the Farmers Home Administration (hereinafter FmHA) an agency of the United States Department of Agriculture, to Frank Chavez, Jr., and his wife Pauline Chavez, in the amount of $8,000. A promissory note was given to the FmHA by Mr. and Mrs. Chavez for that amount.

The debtors, Mr. and Mrs. Chavez, executed two security agreements on May 24, 1971, and September 1, 1972, respectively to secure the loan. A duly executed financing statement was filed in Valencia County, New Mexico, on May 24, 1971. Continuation statements were also filed on November 5, 1975, and March 10, 1976.

The security agreements and financing statements recite that the livestock described therein and all increases, replacements, substitutions and additions thereto are collateral in which a security interest is given to the United States of America. The security agreements also contain a standard provision that the debtor will not sell or otherwise dispose of the collateral without the prior written consent of the secured party.

The initial issue raised is what law, state or federal, is to be applied, to determine if the defendant is liable for conversion of livestock in which the Government holds a perfected security interest? Based upon

the stipulation of the parties the following facts are uncontroverted:

1. The defendant sold 18 head of cattle on behalf of Frank Chavez, Jr., at a public auction on June 22, 1973.

2. The 18 head of cattle sold by the defendant for Frank Chavez, Jr., were the same cattle listed on the security agreements filed May 24, and September 1, 1972, respectively.

3. The defendant sold the cattle for $4,599.89 and transferred the proceeds to Frank Chavez, Jr., after deducting $126.70 as a commission for services rendered.

The Government argues that federal common law should be applied. The rationale of the argument being that as a matter of public policy the security interest rights of the Government should not be subjected to the vagaries of State law. Through the application of federal common law the security interest rights, obligations and duties of the Government would be treated uniformly.

The defendant, on the other hand, argues that State law should be applied.

The Tenth Circuit Court of Appeals disposed of a similar question in *Cassidy Commission Company v. United States,* 387 F.2d 875 (1967). In *Cassidy, supra,* the Tenth Circuit affirmed the district court's imposition of liability against the defendant, livestock commission company, for wrongful conversion.

*Cassidy, supra,* involved a loan made by the FmHA to a farmer. The loan was secured by the execution of a crop and chattel mortgage which included five cows. The mortgage was duly recorded therefore the Government held a perfected security interest. The farmer-debtor delivered to the defendant five cows to be auctioned to the highest bidder. After the cows were sold by the defendant the proceeds were given to the farmer-debtor.

█ In announcing its decision the Court articulated the following proposition:

A uniform federal rule is essential to protect the security interests of the United States and to prevent such interests from being detrimentally affected through the uncertainty that would arise from the application of disparate state rules. Id. at 879.

Moreover, four other circuits concur with the Tenth Circuit holding that federal law controls the issue. *See, e. g., United States v. Sommerville,* 324 F.2d 712 (3rd Cir. 1963) *cert. den.* 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); *United States v. Hext,* 444 F.2d 804 (5th Cir. 1971); *United States v. Carson,* 372 F.2d 429 (6th Cir. 1967); *United States v. Giragossiantz,* 488 F.2d 358 (9th Cir. 1973), *Cassidy Commission Co. v. United States, supra.*

Uniformity and predictability of result would be important ramifications of the application of federal common law to secured transactions involving the Government. As a matter of public policy it would be utter folly to chart the course in any other direction. Therefore, federal law is to be applied to the controversy at bar.

The defendant also raises the issue of waiver. Arguing that in June of 1973, the Government was informed by Mr. Chavez that he was leaving the State of New Mexico. Based upon this knowledge the defendant contends, "the Government obviously knew that he (Mr. Chavez) was not taking the cattle with him" and should have initiated an investigation to determine the status of the cattle. Thus, by failing to act the Government consented to the sale of the cattle and waived its rights under the security agreements.

On November 9, 1973, the FmHA wrote to the mother of Mr. Chavez requesting his present address. The address was sought so that the FmHA could inquire of Mr. Chavez "what he intends to do with the cows."

█ The letter, attached to the stipulation as Exhibit 6, refutes the contention that agents of the Government possessed

knowledge that Mr. Chavez had disposed of the cattle in June of 1973.

Therefore, it is the ruling of the Court that contrary to the terms of the security agreements, the debtors, without the knowledge or consent of the FmHA, delivered 18 head of cattle in which the Government held a perfected security interest to the defendant, who sold the cattle.

Counsel for the defendant contends that the claim of the plaintiff is barred by the New Mexico Statute of Limitations or in the alternative by the doctrine of laches. Both contentions are, however, without merit.

The defendant argues that the four year statute of limitations set forth in 50A–2–725, N.M.S.A. (1953 Comp.), should be applied. The defendant, however, failed to cite any authority to the Court for that proposition.

Indeed, it is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. *See, e. g., United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1960); *Dept. of Revenue v. United States,* 408 F.2d 574 (10th Cir. 1969).

The Court, therefore, finds and concludes that the defendant wrongfully converted the 18 head of cattle involved herein and the plaintiff is entitled to judgment against the defendant in the amount of $3,508.96 with interest, as prayed for.